Genaro Ruiz CAMACHO, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 71098.

Court of Criminal Appeals of Texas, En Banc.

Oct. 13, 1993.

---

3. Unless otherwise indicated, all emphasis is supplied.

Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., and Teresa Tolle, Hugh Lucas, Dennis Jones and Mark Nancarrow, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

Appellant, Genaro Ruiz Camacho, was convicted by a jury of capital murder pursuant to V.T.C.A., Penal Code, Section 19.03(a)(2).[1]

---

1. The indictment alleged that appellant committed the offense by shooting David Wilburn with a handgun while in the course of committing and

The jury answered the special issues in the affirmative. Article 37.071(b), V.A.C.C.P. The trial court then imposed a sentence of death. Article 37.071(g). Appeal to this Court is automatic. Article 37.071(h), V.A.C.C.P. We will affirm.

Appellant brings fourteen points of error to this Court. The sufficiency of the evidence to support the verdict or the answers to the special issues is not challenged. Point of error number eleven complains that the trial court forced appellant to state his grounds for challenge for cause in the presence of the challenged venireman. Point of error number four complains that the trial court erred in not extending the voir dire of the venirepersons who had been selected for the jury to determine whether any of them had changed their attitudes regarding the case. Appellant argues that those selected early on to serve on the jury had exposure to prejudicial news stories published in the community. Points of error numbers one, two and three assert that the State employed its peremptory challenges in a discriminatory fashion. Points of error numbers five, six, and seven challenge the court's action in admitting evidence of extraneous offenses. Point of error number ten alleges that the trial court erred in failing to recess the trial for the purpose of allowing appellant time in which to examine the written statement of a witness called by the State. Point of error number eight argues that the trial court, at the guilt stage, should have given a limiting instruction to the jury with respect to extraneous offenses. Points of error numbers nine, twelve, thirteen and fourteen object to the refusal of the trial court to give requested instructions, definitions and charges to the jury.

We will affirm.

Although the sufficiency of the evidence to support either the verdict of guilt or the answers of the jury to the special issues is not challenged, a brief recitation of the facts will be helpful.

On May 20, 1988, appellant entered the residence of one Sam Wright. He was accompanied by co-actors all of whom possessed firearms. Appellant confronted Wright, his spouse and his three-year-old son and demanded that Wright pay appellant some $20,000, a debt allegedly arising out of prior drug transactions. An employee of Sam Wright, David Wilburn, then arrived at the residence, knocked on the door and was admitted. Appellant then shot the employee. Having shot Wilburn, appellant ordered that Wright's spouse be handcuffed. At that moment the sound of a door slamming shut in another part of the house distracted appellant and his group. Sam Wright took advantage of that moment of inattention to escape from the house. Appellant then retreated from the house with the Wright's son and spouse. Some days later, members of appellant's group killed both the son and the spouse.

Dallas police recovered evidence of forced entry into the residence of Sam Wright, including a severed chain which had secured a set of burglar bars in front of the entrance to Wright's residence and a broken door frame lying in the entryway.

In points of error one, two and three appellant alleges that the State peremptorily struck venirepersons solely because of the race and in violation of TEX.CODE CRIM. PROC.ANN. art. 35.261. Appellant specifically identifies Elizabeth Gamboa, a Hispanic, Johnny Crowder, and Charles Brooks both of whom are black as those venirepersons who were struck by the State because of their race. Appellant states that the discriminatory use of peremptory strikes by the State violates both *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and our own Article 35.261, V.A.C.C.P. Having filed his pre-trial motion to prohibit the State from using peremptory challenges in a racially biased manner, appellant then sought a *Batson* hearing at the conclusion of voir dire, which hearing was conducted before the jury was sworn. In the hearing, the State's attorney was questioned by appellant and stated his reasons for striking the three venirepersons named above.

■ We note that the record demonstrates that appellant's pretrial motion relat-

attempting to commit the felony offense of burglary of a habitation owned by Sam Wright.

ed only to the potential violation of the rule in *Batson* supra. Therefore we must hold that appellant has failed to preserve for review by this Court the point which he seeks to present here, namely that Art. 35.261, V.A.C.C.P. has been violated. *Harris v. State*, 784 S.W.2d 5, 27 (Tex.Cr.App.1989). Only the claim that the State violated the requirement of *Batson*, supra is before us. We have held that appellate review of a *Batson* claim shall be conducted by an examination of the record in the light most favorable to the ruling of the trial court. *Keeton v. State*, 749 S.W.2d 861 (Tex.Cr.App.1988). The standard of review is whether the ruling of the trial court was or was not "clearly erroneous". *Whitsey v. State*, 796 S.W.2d 707 (Tex.Cr.App.1990) (opinion on rehearing). If supported by the record, including the voir dire, the prosecutor's explanation of his use of a peremptory challenge, the rebuttal by appellant and impeaching evidence, the decision of the trial court will not be clearly erroneous. *Vargas v. State*, 838 S.W.2d 552 (Tex.Cr.App.1992). To prevail, appellant must establish that the reasons offered by the State for the peremptory challenge were merely pretextual and a cover for a racially motivated challenge. *Hill v. State*, 827 S.W.2d 860, 870 (Tex.Cr.App.1992).

After the conclusion of the voir dire, but before the jurors were sworn, the trial court conducted a hearing on the charge by appellant that the State had employed racially motivated strikes. The trial court then made findings of fact and conclusions of law on the record. The trial court found no racially discriminatory purpose in the State's peremptory challenges.

■ In regard to venireperson Gamboa, appellant argues that the decision of the trial court was incorrect, and states the following facts in support of this argument:

(1) The venireperson and appellant were of the same ethnic minority, viz. Hispanic.

(2) While the prosecutor under questioning said that Gamboa was too young (24 years old) and was undereducated, the prosecutor actually accepted a veniremen age 26 who was white, and Gamboa testified in voir dire that she was a high school graduate and that she held a diploma from El Centro Junior College.

(3) The prosecutor described Ms. Gamboa as tentative and diffident, not characteristics which he wanted in jurors on cases that he was trying. The personality of Ms. Gamboa, as disclosed in the record, however, is of a person who displayed appropriate responses to the voir dire questioning and who did not equivocate.

In its reply to the foregoing, the State points out that the jury finally selected contained two Hispanic women, that the youngest juror seated was 29 and that venireperson Gamboa was the youngest venireperson actually questioned. The State also emphasizes portions of the voir dire examination of Ms. Gamboa which reveal that she twice allowed her voice to fall below audible levels. The voir dire examination showed that she did not grasp the difference between "mercy" and "mitigation" and that the indictment language was difficult for her to understand fully.

Consonant with the standard of review applicable to the error asserted here, we hold that the decision of the trial court was supported by the record, was not clearly erroneous. Point of error number one overruled.

■ In regard to venireperson Johnny Crowder, the record reflects that the State exercised one of its peremptory strikes against him [2] after it had leveled three different challenges for cause to his serving. All three challenges were denied [3].

During the *Batson* hearing the prosecutor placed great emphasis upon the venireman's answers to the jury questionnaire. He did not refer to or mention the three challenges

---

2. While venireperson Crowder is black and appellant is Hispanic, a racially motivated peremptory strike is impermissible regardless of the race of the defendant and of the venireman. *Powers v. Ohio*, 499 U.S. 400, 412–416, 111 S.Ct. 1364, 1371–1374, 113 L.Ed.2d 411 (1991); *Hill v. State*, 827 S.W.2d 860 (1992).

3. These challenges were that he could not consider assessing the minimum punishment for the crime, that he would automatically answer Special Issue No. one in the affirmative, and that he could not presume the appellant to be innocent.

for cause that he had presented during the voir dire of Mr. Crowder. From this apparent omission, appellant concludes that the proffered reason for the peremptory strike of Crowder was pretextual.

The prosecutor testified without contradiction that Mr. Crowder had circled the following answer on his juror questionnaire:

> 3. Although I do not personally believe in the death penalty, as long as the law provides for it, I could assess it under the proper set of facts and circumstances.

The prosecutor testified that this put him on guard concerning the attitude of Mr. Crowder. The record also reflects that the prosecutor examined this venireman extensively about his attitude toward the death penalty. Furthermore, the State says, no venireman who gave a "bad" response to the following question which was on the jury questionnaire escaped peremptory challenge by the State. The question was:

> Do you believe in the death penalty? — I believe that the death penalty is appropriate in all murder cases.
>
> I believe that the death penalty is appropriate in some murder cases.
>
> Although I do not personally believe in the death penalty, as long as the law provides for it, I could assess it under the proper set of facts and circumstances.
>
> I could never, under any circumstances, return a verdict which assessed the death penalty.

The State points out that among veniremen who showed, from his or her answers to the above questions, a bias against the death penalty and were removed by a peremptory challenge, four were white.

Neither a perfunctory voir dire examination (*Hill v. State*, 827 S.W.2d 860 (Tex.Cr. App.1992)) by the State, nor comparative analysis of other strikes (*Vargas v. State*, 838 S.W.2d 552 (Tex.Cr.App.1992)) supports the appellant in his contention that the motive for striking venireman Crowder was racial bias. In *Emerson v. State*, 851 S.W.2d 269 (1993) we wrote:

> After a prosecutor gives nondiscriminatory reasons for striking prospective minority jurors from the venire, the trial

judge must determine whether these facially neutral explanations are contrived to avoid admitting acts of discrimination. *Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Cr.App.1988), citing *Ex Parte Branch*, 526 So.2d 609 (Ala.1987); *Whitsey v. State*, 796 S.W.2d 707, at 716 (Tex.Cr.App.1989). This must be done because a prosecutor, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror. *Keeton v. State*, 749 S.W.2d, at 868. The trial judge as supervisor of the voir dire is in a position to readily perceive discrepancies during the jury selection process. . . .

■ The burden of persuasion remains with the appellant to establish that the prohibited motive lies behind the use by the State of a peremptory challenge. *Tennard v. State*, 802 S.W.2d 678 (Tex.Cr.App.1990). The appellant, having heard the apparently race-neutral explanation of the prosecutor had nothing additional to present in impeachment of or rebuttal to that explanation. We hold that the decision of the trial court was supported by the record and was not "clearly erroneous." Point of error number two is overruled.

In point of error number three, appellant argues that venireman Charles Brooks, a black, was challenged peremptorily by the State out of discriminatory motives. On direct examination, the State's attorney emphasized two reasons for challenging Mr. Brooks. First, he had placed an "N" in the answer space for the question which asked whether he believed in the death penalty. Second, the prosecutor had been informed by a court bailiff that *one of the veniremen* had asked the bailiff how to insure his inclusion in the ultimate jury. The prosecutor testified that the bailiff had not, however, informed him of the identity of the eager venireman. The prosecutor did not know whether venireman Brooks was that person or not. He testified that he was encouraged, nevertheless, in his suspicion that Brooks was overeager to be selected by the type of answers which the venireman gave in voir dire.

The answers, said the prosecutor, were too pat. To quote his explanation:

A. Mr. Brooks his [hits?] the witness stand, one of the first questions or one of the first answers out of his mouth was that he believed in it, quote, based on the proper sets of facts and circumstances or if the facts warranted it. Now, I've been around the horn long enough to know picking these capital murder jurors, that if there's any one answer to give, the best answer to give on anything concerning a capital murder case, the answer's going to be: it depends upon the facts and circumstances. That's the best answer any juror can give, because it doesn't make you lean one way or the other, just kind of puts you, you know, right there.

Q. So that makes him a pretty good prospective juror?

A. Yeah, that's what I thought. But throughout his entire voir dire whenever I was talking to him, whenever ... I don't know really who was speaking to him on behalf of the defendant, but any time he had a chance to throw that little phrase in, whether it was applicable or not in response to the question, he'd always throw it in, and I guarantee you he said that three or four or five times.

Our review of the voir dire examination of venireman Brooks discloses that the prosecutor was, indeed, very attentive to the significance of the "N" which the venireman had placed next to the question "Do you believe in the death penalty." At one point in the voir dire, the appellant's trial counsel broke in and commented to the trial court:

Mr. Whittier: Excuse me, Mr. Brooks. I don't mean to be rude. But Judge, we're going to object to counsel continuing. We've been on this now for nine minutes. Mr. Brooks has been unequivocal in his answers that he believes in it in some cases and if the evidence is there, he doesn't have any problem voting in such a way that the death penalty will eventually be imposed. And he's been unequivocal on that. He's not shaken on that and this was in fact a long questionnaire and by the time he got to Page 14, it appears form [sic.] his answers thus far that he can't give an explanation for why there's an N there. And we object to counsel harping on this idea when the juror has given a fairly clear answer of his position on that point thus far. We object to it. It's repetitious.

The objection was overruled by the trial court and the examination continued.

It is obvious from the record that the concern of the prosecutor about venireman Brooks' true attitude toward the death penalty was paramount in the decision to strike him.

The ruling of the trial court, on this record, was not clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989). Point of error number three is overruled.

In his fourth point of error, appellant objects to the refusal of the trial court to allow him to conduct a fresh voir dire examination of the selected and sworn members of the jury. His argument for doing so was that many days had passed since the prior voir dire and some of the veniremen selected for the jury might have altered their respective attitudes since last examined. This request was prompted, appellant explained, over concern that recent media coverage might have prejudiced the jurors in some way.

■ The State's rejoinder was that appellant failed to preserve error, if any error existed. The record demonstrates that appellant moved the court to allow additional voir dire and that the trial court refused to comply with the motion. Such an exchange between a party and the court preserves the matter at issue for review in this Court. Tex.R.App.Proc. 52(a).

■ No error was occasioned by the refusal of the trial court to reopen voir dire. The record demonstrates that the trial court had already admonished each juror that he or she should be careful to avoid exposure to media stories about the case. Whether any jurors might have ignored the instruction would best be addressed in a motion for new trial or, should jury misconduct be exposed during trial, by a motion for mistrial. *Bell v. State,* 724 S.W.2d 780, 797–798 (Tex.Cr.App. 1986); Tex.R.App.Proc. 30(b)(8).

No error is reflected in point of error number four, and it is overruled.

■ In his point of error number eleven, appellant makes an objection to the refusal of the trial court to allow him to explain his challenges for cause outside the presence of the venireman who was being challenged. Appellant is, however, unable to inform this Court of any authority which sustains his assertion that the trial court erred by keeping the challenged juror present when a challenge for cause was made.

We have held that the conduct of voir dire is a matter confided to the sound discretion of the trial court. Article 35.17, V.A.C.C.P.; *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex. Cr.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). The record in the case at bar reveals no abuse of discretion. Point of error number eleven is overruled.

In point of error number ten, appellant complains that the trial court denied him a recess in which to examine the written statement of a witness. This point of error is premised upon Rule 614(d) of the Texas Rules of Criminal Evidence. This rule authorizes the trial court to order the production, after a witness has testified, of the written statement of the witness which relates to the matter testified to. Sub-paragraph (d) states:

(d) **Recess for Examination of Statement**

Upon delivery of the statement to the moving party, the court, upon application of that party, shall recess proceedings in the trial for a reasonable examination of such statement and for preparation for its use in the trial.

The State responds that the trial court allowed appellant ample time, albeit in the courtroom, to read the statement of the witness prior to cross-examination. Indeed, the record reflects that appellant's trial counsel and co-counsel both read the statement completely and that it was employed in cross-examination of the witness whose statement it was.

■ Sub-paragraph (d) of Rule 614, Tex. R.Crim.Evid. places upon the trial court a

degree of discretion and his actions under the sub-paragraph will not be reversed by the appellate court absent an abuse of that discretion. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Cr.App.1990); *Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Cr.App.1992).

■ In the case at bar the trial court suspended the examination of the witness long enough for the appellant's trial counsel (both of them) to read and comprehend the statement. The record reflects, further, that appellant was allowed by the trial court to compare the statements of other witnesses to the one given by the witness on the stand. Upon this record we perceive no abuse of discretion by the trial court. Point of error number ten is overruled.

Points of error five, six and seven make complaints about the trial court's having admitted evidence of extraneous offenses. Appellant bases his argument upon sections 403 and 404 of the Texas Rules of Criminal Evidence.

The extraneous offenses which appellant claims were barred by Rules 403 and 404, Tex.R.Cr.Evid. are:

(1) The kidnapping of the victim's wife and her young son (committed by appellant and his co-actors); Point of error number five.

(2) The subsequent murder of the two persons kidnapped; Point of error number five.

(3) The appellant's assault upon one Jeaneene Wallace perpetrated some weeks prior to the murder charged in the case at bar; Point of error number six.

The counterargument of the State is that error was not preserved, and, in any event, each extraneous offense was part of the "res gestae" of the *corpus delicti*, and thus admissible under Rule 404(b), Tex.R.Crim.Evid.

■ The evidence of extraneous offense (1) supra came from testimony of the owner-occupant, Sam Wright, of the house which was burglarized by appellant, and from an accomplice witness. While the record demonstrates that some testimony of kidnapping was admitted without a timely and specific

objection by appellant, we hold that the objection to the line of testimony was voiced sufficiently clearly to preserve error for this court. Rule 52(a), Tex.R.App.Proc.; *Cisneros v. State,* 692 S.W.2d 78, 83 (Tex.Cr.App. 1985); *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App.1977).

■ Appellant argues that testimony of the kidnapping offense might have been admissible had the testimony been limited to the events at and shortly after the time of the murder. Appellant states that to have allowed further elaboration of the kidnapping as it evolved violated Rule 404(b), Tex. R.Crim.Evid., in that the only end of such evidence was to prove that appellant acted in conformity with his character when he murdered the victim.

■ We hold, however, that the kidnapping evidence is "[s]ame transaction contextual evidence," *Mayes v. State,* 816 S.W.2d 79, 86 n. 4 (Tex.Cr.App.1991); *Rogers v. State,* 853 S.W.2d 29 (Tex.Cr.App.1993). Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven. *Mayes,* supra at 86. As such, it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged.

Appellant argues further that the admission of testimony by an accomplice witness describing the murder of the two kidnap victims in Oklahoma four days after the murder for which appellant was indicted violated Rule 404(b), Tex.R.Crim.Evid.Ann. This double murder was not tightly linked or interwoven with the offense charged says appellant. Its proof could serve only one purpose, namely to establish character conformity.

The State argues that it is free to introduce evidence of both kidnapping and murder in order to prove that appellant had an intent to commit a felony at the time he entered the residence. Appellant points out that the evidence of the murder charged in the indictment was strong and uncontradicted.

The State is entitled to introduce evidence as to the intent of appellant. Here, the evidence of the murders committed in Oklahoma help establish the intent of appellant during the burglary. In this regard, the State places reliance upon *Ramirez v. State,* 815 S.W.2d 636, 641 (Tex.Cr.App.1991) (reversed on other grounds). There we held admissible the daughter's testimony that her mother had told her the appellant had raped her.

As in *Ramirez,* the indictment did not specify which burglarious intent appellant had when he entered the house. Under V.T.C.A. Penal Code, sec. 30.02(a), a person commits an offense "if, without the effective consent of the owner, he: (1) enters a habitation ... *with intent to commit a felony* or theft ..." or "(3) enters a ... habitation and *commits or attempts to commit a felony* or theft." We held there that:

> Circumstances of the offense which tend to prove the allegations of the indictment are not extraneous offenses. *Ramirez v. State,* 815 S.W.2d 636, 643 (Tex.Cr.App. 1991)

We hold that the murders in Oklahoma were part of the same transaction contextual evidence. Point of error number five is overruled.

Point of error number six focuses upon the trial court's admission into evidence of testimony by Jeaneene Wallace, a rebuttal witness, regarding an alleged assault by appellant. Wallace stated that appellant grabbed her by the neck and shoved his thumb into her throat. Appellant complains that the "trial court committed error in overruling appellant's objection to the admission of an extraneous offense in violation of the provisions of TEX.R.CRIM.EV. 404(b)." The assault occurred in a nightclub where the witness was employed. She was a party to a conversation between herself, appellant, and one of his associates all of whom were seated at a table. The assaultive conduct of appellant accompanied his remarks that a man owed him money and that appellant would kill the man and his family because of the debt. The statements and events testified to by Wallace occurred prior to the actual murder and kidnapping. As in the previous

point of error, appellant asserts that the sole purpose of the prosecutor in presenting the testimony of this witness was to use character evidence to prove that appellant was, by nature, a criminal who had perpetrated the murder charged against him.

In reply to the point of error, the State says that the appellant's objection at the time of trial does not comport with appellant's point of error on appeal. We find the record supports the State's conclusion.

 Appellant's many trial objections to Wallace's testimony were either that it was hearsay, or that it was irrelevant, not that it placed an inadmissible extraneous offense before the jury. As in *Johnson v. State*, 803 S.W.2d 272 (Tex.Cr.App.1990), the proper legal basis for appellant's trial objection "should have been that the evidence was offered to prove an extraneous uncharged offense not within· the permissible scope of 404(b) and was offered to show that appellant was·a criminal generally." *Johnson v. State*, 803 S.W.2d, at 292.

As pointed out above, appellant failed to make the proper objection at trial. Appellant's hearsay and relevancy objections did not address the correct evidentiary basis for the exclusion of Wallace's testimony. Appellant's objections at trial do not comport with the point of error raised on appeal. An objection stating one legal theory may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, at 870 (Tex.Cr.App.1990); and *Johnson v. State*, 803 S.W.2d, at 292.

Appellant responds that his trial objection, though general, was sufficient under the circumstances, citing *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977). We find that appellant's reliance upon *Zillender* is misplaced. *Zillender* stands only for the proposition that an otherwise insufficient general objection will be sufficient where the correct ground of exclusion is obvious to the trial court. The record does not support such a finding in the instant case. At one point, when objecting, appellant complained that the trial court knew what the State was doing with Wallace's testimony. The trial court responded, "The Court has no knowledge on that subject." Appellant let the matter drop. We conclude appellant's objections at trial to Wallace's testimony failed to preserve error for appellate review. Appellant's sixth point of error is overruled.

 Point of error number seven refers to the admission of the evidence discussed in point of error number six. In this point, appellant argues that the trial court erred in admitting the testimony because, under Rule 403, Tex.R.Crim.Ev., the probative value of the evidence was substantially outweighed by the potential for unfair prejudice.

The State counters that appellant has failed to preserve error under Rule 403 Tex. R.Crim.Proc. because his objections were too vague to apprise the trial court of the specific complaint. In point of error six, we found appellant's objections at trial did not preserve the error which he complains of on appeal. Appellant's general hearsay and relevance objections (including the allegation that it "may be more damaging and inflammatory than it is probative") were directed to the conversation between Wallace and appellant regarding appellant's plans for collecting a debt owed to him. They were not directed to the extraneous misconduct which he complains about in point of error seven. Appellant failed to put the trial court on notice of what evidence he wanted the trial court to balance probative value against prejudicial effect. Appellant failed to preserve this error for appellate review. Point of error number seven is overruled.

Point of error number eight argues that the trial court erred in failing to give limiting instructions in the charge to the jury with respect to the extraneous offenses which were referred to in points of error five and six above.

The State replies that the offenses of murdering two people, the spouse of the owner of the residence which appellant had entered, and her minor son were not extraneous offenses, but, rather, were *res gestae*. Hence, no limiting instruction was required. With respect to the offense against the woman who testified that appellant had grasped her by the throat and had inserted his thumb into her throat, the State argues that appel-

lant never requested a limiting instruction for that extraneous offense.

The record reflects that appellant requested a limiting instruction in the following language:

Defendant objects to the failure of the court to instruct the jury that any evidence of an offense other than that charged in the indictment if any, may not be considered for any purpose by the jury unless and until they believe from the evidence beyond a reasonable doubt that the defendant committed such other offense, if any, and then such may be considered only for the limited purpose for which it was offered and admitted. (i.e. intent, knowledge, design, scheme; identity, etc.) *Ernster vs. State,* [165 Tex.Crim. 422] 308 SW[2d 33] 22 (Tex.Crim.App.1952 [1957]).

In the colloquy among the trial court, appellant's counsel and the counsel for the State, the following exchanges occurred:

Mr. Mitchell: Tell you what, Judge, could we hold objection to No. 3 and let me review this before making any comments and going to No. 4?

The Court: All right.

Mr. Mitchell: I think No. 4 is pretty much self-explanatory, Judge. Of course we're referring to the two deaths in Oklahoma and the testimony from Mr. Cummings with regard to the marijuana conspiracy.

The Court: Some of the marijuana conversations came in on redirect examination because discussion of them had occurred during cross-examination. They were not brought out on direct examination.

Mr. Mitchell: Judge, again, I wasn't here. I didn't know that testimony was elicited.

The Court: The State feels that we should limit the marijuana ... well, I'm not going to comment on which offenses, but does the State object to limiting the charge regarding extraneous offenses?

Mr. Jones: Your basic ...

The Court: Limiting charge, yeah. And again, if ...

Mr. Jones: Judge, we don't have any objection to the basic.

The Court: No, no, because that wipes out the res gestae [sic] offenses or the continu-

ing criminal episode or whatever theory you want to say that all of the other is admissible under. They are extraneous but they're also part of the primary offense. You see what I'm saying? Actually they're not in the true legal sense of the word, they are not extraneous offenses except for the marijuana conversation, smuggling conversation.

Mr. Mitchell: Judge, are you ruling then that the killings in Oklahoma are res gestae [sic]?

The Court: No. I'm ruling that they're admissible.

No limiting instruction was ultimately included within the charge to the jury.

■ The record demonstrates that the appellant, during the structuring of the charge to the jury, was focused upon only two extraneous offenses, viz. the kidnapping and later murder of two persons, and a separate offense relating to further drug importation. The trial court considered that proof of the offenses against the two persons was "same transaction" contextual evidence. Appellant has not brought to this Court a complaint based upon the drug smuggling extraneous offense and we need not address it.

The contention of appellant, that the kidnapping and murder of two persons taken hostage at the time of the murder merely shows extraneous offenses, has been foreclosed against him. We hold that those acts fall within the language of Rule 404(b), Tex. R.Crim.Evid. which applies to proof of offenses "... arising in the same criminal transaction."

In *Ramirez v. State,* 815 S.W.2d 636, 644 (Tex.Cr.App.1991) we wrote of a rape which occurred during a murder-robbery:

No limiting instruction was required in this cause because the evidence of sexual assault did not present an extraneous offense to the jury nor was the evidence admitted for any limited purpose. See and cf *Wilkerson v. State,* 736 S.W.2d 656, 661 (Tex. Cr.App.1987) (limiting instruction on an extraneous offense not required where extraneous offense is part of transaction which includes offense on trial); *Ernster v.*

*State*, 165 Tex.Crim. 422, 308 S.W.2d 33 (1957) (trial court reversibly erred in failing to give instruction limiting jury's consideration of extraneous offense to purpose for which admitted). Moreover, the jury charge at guilt/innocence did not limit the issue of burglarious intent to appellant's intent to commit *theft* as stated in his confession.

In *King v. State*, 553 S.W.2d 105, 106 (Tex.Cr.App.1977) we stated:

> Appellant apparently desired a limiting instruction on evidence of extraneous offenses he committed both shortly before and after the murder of Officer Lane. These offenses included theft of a police officer's car, aggravated assault, theft of a policewoman's pistol and purse, resisting arrest, and impersonation of a police officer.
>
> In his brief, appellant concedes that the evidence of the extraneous offenses was "probably legally admissible." He contends, however, that the court should have instructed the jury that such evidence should be limited to the issue of appellant's identity.
>
> Two valid reasons exist for overruling this ground of error. First, the evidence of the extraneous offenses showed "the context in which the criminal act occurred—what has been termed the 'res gestae'." *Albrecht v. State*, Tex.Cr.App. 486 S.W.2d 97 at 100 [1972].

The proof of the kidnapping and of the subsequent murders of two persons found in the house which appellant entered is same transaction contextual evidence. It was admissible as such and was not subject to the requirement of a limiting instruction. Point of error number eight is overruled.

In point of error number nine, appellant assails what he describes as the refusal of the trial court to charge the jury that the testimony of an accomplice to an extraneous offense must be corroborated by other evidence which tends to connect appellant to the extraneous offense. The extraneous offenses to which appellant here has reference are the kidnapping and later murder of the two residents of the house burglarized by appellant.

The response of the State is twofold. The abduction and murder did not constitute extraneous offenses, but were the aggravating elements of the capital offense. No corroboration is needed as to the proof of the aggravating elements of a capital murder even if those elements are proven by the testimony of an accomplice. In addition, the State says that a proper instruction on corroboration was given.

We have previously held in this opinion that the abductions and murders did not constitute separate "extraneous" offenses. Rather, they were same transaction contextual offenses the admission of which was intended to help the jury understand the entire *corpus delicti*. Furthermore, the record reflects that the instruction given to the jury by the trial court regarding the accomplice witness testimony stated the rule correctly.[4] No error is reflected in appellant's ninth point of error and it is overruled.

---

4. The substance of the charge as it related to the point of error read as follows:

> You are instructed that an accomplice as the term is hereinafter used, means any person connected with the crime charged, as a party thereto, and includes all persons who are connected with the crime, as such parties, by unlawful act or omission on their part transpiring either before or during the time of the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Mere presence alone, however, will not constitute one a party to an offense.
>
> Furthermore, you are instructed that mere presence of the accused, if he was, in the company of the accomplice or accomplices shortly before or after the commission of the crime, if there was one, is not standing alone sufficient to corroborate the testimony of one or more, if any accomplices.
>
> The witnesses, George David Cooke and Larry Gene Merrell are accomplices, if an offense was committed, and you cannot convict the defendant upon their testimony unless you first believe that their testimony is true and shows that the defendant is guilty as charged, and then you cannot convict the defendant upon said testimony unless you further believe that there is other testimony in the case, outside of the evidence of the said George David Cooke and Larry Gene Merrell tending to connect the defendant with the offense committed, if you find that an offense was committed, and the

In points of error twelve, thirteen and fourteen appellant complains that the trial court erred by failing to define "criminal acts of violence," "probability," and "society."

While acknowledging that this Court has declined to require that a definition of the above terms be included in punishment phase jury charges, appellant urges us, nevertheless, to reverse our position. Pointing out that an explanation of the phrase "reasonable doubt" was recently manifested by our decision in *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991), appellant argues that this Court can reexamine and alter rules previously settled. The reason which appellant offers to induce our reconsideration of established jurisprudence in this area is that absent such definitions juries are left without guidance in their effort to arrive at a reasoned moral response to the issues put to them in the punishment phase of the trial.

The State counters by noting that the opinion in *Geesa* was necessitated by a change in the standard of review in cases premised upon circumstantial evidence. The State further refers to numerous previous opinions of this Court which clearly declare that no definition of the words and phrases referred to by appellant in these three points of error is required.

Appellant's reliance upon the apparent introduction by this Court of a definition for the phrase "reasonable doubt" in *Geesa* is simplistic. The reluctance demonstrated by this Court in the face of numerous requests for definitions of words or phrases which appear in Article 37.071 V.A.C.C.P. is founded upon respect for the division of authority between the legislature and the judiciary established by Article II, Section 1 of the Constitution of the State of Texas. In Article 3.01, Tex.Code Crim.Proc.Ann. the legislature has directed that words not "specially defined" shall be understood in their ordinary sense. Included among such words are those enumerated in appellant's points of er-

ror twelve, thirteen and fourteen. Prior to our opinion in *Geesa*, the concept of reasonable doubt had not been defined by the legislature of the State of Texas. See, *Geesa v. State*, 820 S.W.2d 154, 161, n. 10 (Tex.Cr.App.1991). Thus our jurisdiction to define words of ordinary meaning which are found in an enactment of the State Legislature is limited.

In *Goss v. State*, 826 S.W.2d 162, 171 (Tex.Cr.App.1992) appellant challenged the refusal of the trial court to define "criminal acts of violence," "probability," and "continuing threat to society." This Court held that no error was occasioned by the trial court's refusal to define those terms in the charge on punishment. See also *Cantu v. State*, 842 S.W.2d 667 (Tex.Cr.App.1992). In *Rougeau v. State*, 738 S.W.2d 651, 660 (Tex.Cr.App. 1987), *overruled on other grounds*, we stated that the word "society" should be understood by jurors in its ordinary connotation. See also *Caldwell v. State*, 818 S.W.2d 790, 798 (Tex.Cr.App.1991). We find no cause to depart from our prior holdings on the subject of defining phrases or words found in Article 37.071, V.A.C.C.P. Points of error numbers twelve, thirteen and fourteen are overruled. Finding no error in the judgment and sentence of the trial court, the same is affirmed.

CLINTON, Judge, dissenting.

I dissent, *inter alia*, to the Court's treatment of appellant's fifth point of error in this appeal. The majority disposes of this contention by holding that evidence appellant participated in the murder of two people in Oklahoma several days after the offense under indictment was admissible under Tex. R.Cr.Evid., Rule 404(b) as "same transaction contextual evidence." The Court can only accomplish this objective by willfully ignoring the recent holding in *Rogers v. State*, 853 S.W.2d 29 (Tex.Cr.App.1993), and by failing faithfully to apply the Rules of Criminal Evidence as construed by *Montgomery v. State*,

corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission, and then from all of the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him.

You are further instructed that one or more accomplices cannot corroborate each other; but such corroborative evidence, if any, must be from some other source than said accomplices, George David Cooke and Larry Gene Merrell, or either of them, as hereinabove charged.

810 S.W.2d 372 (Tex.Cr.App.1991) (Opinion on rehearing).

## I.

Appellant was indicted for the offense of murder in the course of committing burglary. The State presented evidence to show, and the jury was authorized to convict appellant on the basis of a finding that, appellant entered the habitation of Sam Wright with the intent to commit, and that he did commit, either aggravated assault or kidnapping. The evidence established that appellant and three accomplices broke into the home of Wright on the morning of May 20, 1988, and threatened Wright, his live-in girlfriend, and their three year old son at gunpoint, demanding money that Wright owed appellant from a drug deal. During this ordeal, the deceased, David Wilburn, a young man in the employ of Wright, arrived at the house. Wilburn was forced to the floor and soon fatally shot through the head by appellant. The gunmen then attempted to herd Wright and his son and girlfriend out into a waiting car. Wright made a break for it and escaped, but the girlfriend and son were taken away and held against their will for three days in a Dallas motel. The evidence establishing these events was more than sufficient to support each of the State's theories of murder in the course of a burglary.

The State was also allowed to prove at trial over repeated objections as to relevancy—an objection we have held sufficient to invoke Rule 404(b), in *Montgomery v. State*, supra, at 387—that after those three days in a motel in Dallas, the girlfriend and son were driven up to Oklahoma, told they were being taken to a rural airstrip to be flown to California, but were instead shot a number of times each through the head and left in a crude grave. Although not the triggerman on this occasion, appellant was present and instigated the killings. Moreover, a medical examiner testified as to the autopsies conducted on the son and girlfriend, and an F.B.I. agent described, and photographs were admitted showing, the discovery and disinterment of the bodies. During his summation the prosecutor remarked at some length on these events—without once attempting to demonstrate how they contributed to establish any material element of the State's case.

The trial court expressly admitted evidence of the double murder on the theory that they were "res gestae" of the indicted offense. The State now argues for the first time on appeal that they were relevant to show appellant's intent to commit a felony. The trial court's rationale for admission is an anachronism under the new Rules of Criminal Evidence as construed in *Rogers v. State*, supra. The State's belated rationale is simply untenable under the analysis of *Montgomery v. State*, supra.

## II.

Neither "res gestae" nor "same transaction context evidence" is an incantation before which Rule 404(b) disappears. Today the majority seems to adhere to its mistaken belief that in *Mayes v. State*, 816 S.W.2d 79 (Tex.Cr.App.1991), we held that "same transaction context" evidence is admissible, Rule 404(b) notwithstanding, simply because it *is* "same transaction context" evidence. We did not. See *Lockhart v. State*, 847 S.W.2d 568, at 575 (Tex.Cr.App.1992) (Clinton, J., dissenting); *Rogers v. State*, supra at 35–36 (Clinton, J., concurring); *Warmowski v. State*, 853 S.W.2d 575, at 580 (Tex.Cr.App. 1993). Indeed, in *Rogers* we made it clear that where "same transaction context" evidence serves no other legitimate purpose under Rule 404(b), it at least must be "necessary" to be admissible. In my view this means that it must be "impossible to present a coherent picture of the charged offense without inadvertently proving the 'other crime, wrong, or act.'" *Id.*, at 36. Here the jury had a perfectly complete and coherent picture of appellant's murder of Wilburn in the course of burglary without any resort to evidence of the subsequent killings. There was nothing "inadvertent" about the State's proof; the later murders were easily severable from the charged offense. But it is not just according to my own view that the killings in this cause were not "necessary." The majority in *Rogers* held that proof of "same transaction context" evidence would be "necessary" only when without it the charged offense "would make little or no sense." *Id.*,

at 33. As the recitation of facts above demonstrates, perfectly good "sense" can be made of the charged offense without any reference whatsoever to the later killings. I fear that this phrase, "same transaction context" evidence, has already begun "to degenerate into a talisman for admissibility, as over the years 'res gestae' did." *Id.*, at 36.

## III.

The State also argues, and the majority today accepts, that the Oklahoma killings were admissible to prove appellant's specific intent in committing the predicate offense of burglary. As authority for that proposition both the State and the majority cite *Ramirez v. State,* 815 S.W.2d 636 (Tex.Cr.App.1991). There we held that evidence the deceased had been raped before she was killed was admissible in a prosecution for murder in the course of a burglary. The indictment in *Ramirez* authorized conviction for murder in the course of burglary under any available theory of burglarious intent. Ramirez argued that because the State was able to produce evidence that he entered the deceased's apartment with an intent to commit theft, evidence of the rape was inadmissible. We rejected his argument, observing that under the indictment proof of one burglarious intent would not preclude the State from offering evidence of another. That observation is inapposite here.

Here, of course, we also have a prosecution for murder in the course of a burglary. The indictment alleged no specific theory of burglary. Therefore, any evidence appellant intended to commit, or attempted or did commit, theft or any other felony would be admissible. But evidence that appellant participated in the killings in Oklahoma does not contribute in any way—other than by an inference involving character conformity—to prove appellant entered Wright's home and intended to commit or committed a felony.

The blueprint for determining admissibility of extraneous offenses under the new rules was laid out in *Montgomery v. State,* supra, at 386–87. It bears repeating here. Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable than it would be without that evidence. Tex.R.Cr.Evid., Rule 401. All relevant evidence is admissible, Tex.R.Cr.Evid., Rule 402, except, *inter alia,* evidence of other crimes, wrongs, or acts admitted to support an inference of character conformity. Tex.R.Cr.Evid., Rule 404(b). Evidence of other crimes, wrongs, or acts may be admitted, however, if it serves a particular purpose beyond its relevance to show character conformity. *Id.* The question is whether evidence of the Oklahoma killings has a tendency to make more probable that appellant entered Wright's home and committed a felony, or that when he entered the home he intended to commit a felony. If so, it was indeed "relevant" apart from its character conformity value.[1]

In my view, however, it was not. In *Ramirez* evidence of the deceased's rape clearly served the purpose of proving entry with an intent to commit rape. I do not see how that can be said of the Oklahoma murders in the case at hand. The evidence already showed appellant entered Wright's home and committed aggravated assault, a completed felony offense. It also established that appellant kidnapped Wright's girlfriend and child, and attempted to kidnap Wright himself.[2] That appellant also killed the girlfriend and child four days later adds nothing to the proof that appellant committed or intended to commit the assault and kidnapping that occurred *at the time of the entry.* The burglary was a *fait accompli* well before the killings took place. Cf. *Fitzgerald v. State,* 782 S.W.2d

---

1. Even relevant evidence may be excluded if valid objection is made that its probative value is substantially outweighed by the danger of unfair prejudice under Tex.R.Cr.Evid., Rule 403. No such objection was made in this cause, however. That contention is therefore procedurally defaulted. *Montgomery v. State,* supra, at 389.

2. At one point during trial the State suggested the murders were relevant to prove appellant did

not release his victims alive and in a safe place. See V.T.C.A. Penal Code, § 20.04(b). We have defined this as a punishment issue, however, determining range of punishment but having no bearing on whether an accused committed the offense of aggravated kidnapping. See e.g., *Williams v. State,* 851 S.W.2d 282 at 286 (Tex.Cr. App.1993).

876, at 879 (Tex.Cr.App.1990) (evidence of extraneous assaults committed after escape from penitentiary relevant neither to an element of the State's case in prosecution for offense of escape, nor to rebut defensive theory of necessity). Nor may the murders themselves serve as the underlying offense establishing burglary, since they occurred four days later, and not, again, *at the time of the entry*.[3] Unlike the rape in *Ramirez*, the Oklahoma murders have no tendency to make more or less probable any material issue in this case, except to show appellant is a criminal, and that he acted accordingly. Such evidence is objectionable under Rule 404(b).

Moreover, given the prominent place of the extraneous murders both in the State's evidence and in its summation, we could hardly find its admission over objection to have been harmless beyond a reasonable doubt. Tex. R.App.Pro., Rule 81(b)(2).

We set a bad example for the courts of appeals when we treat our own rules and precedents so cavalierly. I dissent.

---

**3.** I daresay the Court would not likely construe V.T.C.A. Penal Code, § 30.02 to define burglary to include entry with the intent to commit theft or some other felony, or entry and subsequent commission of theft or some other felony, *at a later time and a different place!*