COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MANUEL DUARTE, | § | No. 08-07-00151-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 384th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20060D01209) |
| | § | |

**O P I N I O N**

This is an appeal from a conviction for the offense of possession of marijuana in an amount of two thousand pounds or less, but greater than fifty. The court assessed punishment at eight years' community supervision. We affirm.

## I. SUMMARY OF THE EVIDENCE

At trial, Detective Marcela Gil of the El Paso County Sheriff's Department, testified that, on February 23, 2006, she was assisting in the surveillance of a residence located at 2620 Gene Littler in El Paso. Around 2:30 p.m., the surveillance officers saw a small SUV arrive at the residence. It was driven by an individual whom the investigation had focused upon, because he was suspected of possessing a large amount of marijuana. Gil stated that this individual was named Munoz, and he was Appellant's co-defendant. Munoz parked in the driveway and exited the vehicle. He went into the house through the front door. Several minutes later, Appellant arrived. He parked his car about two houses down from 2620 Gene Littler, then walked over to that house and entered by the front door. There was parking space available directly in front of the residence, which raised the suspicions of the detectives observing the house.

Several minutes later, the right-side door of the two-car garage was opened, and Appellant and Munoz were seen at the garage door. Munoz then drove the SUV into the garage, while Appellant waited at the garage door. Appellant closed the door behind the vehicle.

The officers conducting the surveillance then dispersed into the area, leaving one officer to observe the house. That officer indicated to the other officers that Appellant and Munoz had left the house and were walking down the street. It was somewhat cold and there were no stores within walking distance. The two walked several blocks, crossed the street, walked back past the house for one block, again crossed the street, returned to the house, and entered through the front door. Detective Gil testified that this activity was, based upon her experience, an attempt to detect surveillance vehicles.

Some time later, it was reported to Detective Gil that the vehicle had been moved from the garage to the driveway. Approximately four hours after the two had conducted their walk up the street, Munoz and Appellant left the residence in the vehicle. Munoz was driving, with Appellant as a passenger. The officer who was observing the house related to the other officers that the vehicle would stop and then start speeding, a known behavior of drug traffickers. Then the driver started driving very fast. He rolled through stop signs and took residential streets, instead of main thoroughfares. The officers concluded that the driver thought that he was under surveillance, due to the way he was driving.

Detective Gil and her partner caught up with the vehicle when it pulled into a gas station, and they informed the other members of the surveillance team of its location. Detective Gil and her partner then returned to the residence, because they knew that Munoz's wife was there and they wanted to see where she went, if she left the house. It was reported to Detective Gil that other surveillance team members had stopped the vehicle for traffic violations and that they had discovered

two cardboard boxes filled with marijuana.

Detective Gil testified that the vehicle was stopped for a traffic violation. Approximately 105 pounds of marijuana were found in the vehicle. The marijuana was wrapped in tape inside two cardboard boxes. She stated that the vehicle had been under continuous surveillance from when it was driven from the house until it was stopped. When Munoz and Appellant stopped at the gas station, the vehicle was stationary, and no one approached or exited it. The detective testified that she believed the marijuana found in the vehicle had come from the residence. She and her partner proceeded to the house.

Detective Gil then testified regarding the organizational structure involved with smuggling drugs from Mexico into the United States. She stated that after the drugs cross the border, they are stashed in warehouses and in houses like the residence in this case. While the drugs are stashed, individuals are hired to take care of the contraband and keep it in a safe location, until it is ready for transport. It was Detective Gil's opinion that Appellant was hired for that purpose.

Deputy Daniel Beltran of the El Paso County Sheriff's Office testified that, on February 23, he was assigned to the highway narcotics interdiction unit. He was in uniform and was driving a marked patrol car. His assignment was to stay on the outer periphery of the surveillance operation and conduct a traffic stop of the vehicle, if needed. Deputy Beltran was given a description of the vehicle and the license plate number. He located the vehicle and followed it for ten minutes, until he made a traffic stop at approximately 6:25 p.m. He stopped the vehicle for speeding and failing to signal lane changes.

When Deputy Beltran approached the vehicle, he saw two cardboard boxes in the rear of the vehicle. He went to the passenger side of the vehicle. The deputy asked Appellant to lower his window. At first, Appellant lowered the window only a couple of inches. At Deputy Beltran's

request, he lowered the window the rest of the way. Appellant seemed nervous, and he kept looking back at the driver whenever Beltran asked him a question. The driver indicated that he was doing a friend a favor. The deputy called for assistance. A K-9 handler, Deputy Jose Quiroz, arrived, and the two officers asked the driver for consent to search the vehicle. The driver consented, and the dog alerted to the presence of narcotics in the vehicle. There were two boxes which contained what Deputy Beltran recognized as marijuana. He arrested the driver, Munoz, and Appellant.

Deputy Quiroz testified that, on February 23, he was a deputy with the El Paso County Sheriff's Office, assigned to the metro narcotics task force in the K-9 section. On that date, he was called to assist Deputy Beltran with a traffic stop. After Deputy Beltran obtained consent to search the vehicle, Deputy Quiroz began to search on the exterior of the vehicle with the dog. The dog alerted to the rear cargo area of the vehicle, which contained some boxes. Deputy Quiroz opened the door and noticed a strong odor of marijuana. Both boxes contained numerous bundles of marijuana.

After the search, Deputy Quiroz went to the Gene Littler residence. The deputy then testified outside the presence of the jury, in order for the court to conduct a hearing pursuant to Rule 403 of the Rules of Evidence on the admissibility of the evidence obtained at the residence. Deputy Quiroz stated that, after the vehicle search, he went to the residence and conducted an exterior K-9 sniff search of the front and garage doors of the home. He was advised by other officers that a written consent-to-search had been obtained. When he entered the residence, Deputy Quiroz smelled a strong odor of marijuana. The search dog alerted to the garage area. He found boxes in the garage which were similar to the boxes found in the vehicle, and the marijuana in the boxes was packaged in a distinguishingly-similar manner to the packaging found in the boxes in the vehicle.

The judge heard arguments on the issue of the admissibility of the evidence and the testimony

concerning the search of the house. The court ruled that the evidence tended to prove Appellant's knowledge of the contraband in the vehicle and also found that there was no evidence that the probative value of the testimony was substantially outweighed by any danger of unfair prejudice. Deputy Quiroz then testified before the jury concerning the search of the residence.

Detective Jose Luis Rivera of the El Paso County Sheriff's Department testified that he assisted with the search of the residence. Detective Rivera testified that the owner of the residence had given them permission to search the house. The detective testified that the search dog had alerted them to the garage area. When they entered the garage, they could smell a strong odor of marijuana. They found seven large boxes containing marijuana in the garage. The boxes contained 581.2 pounds of marijuana. Detective Rivera testified that the boxes were not hidden and were in plain view where anyone could see them.

## II. DISCUSSION

In Appellant's sole issue, he contends that the court erred in allowing the State to present extraneous offense evidence to the jury during the guilt-innocence stage of trial, because it was not relevant and because the evidence was more prejudicial than probative. The State argues that the complained-of evidence is not an extraneous offense; rather, it is part of the charged offense.

Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person, in order to show action in conformity therewith, but such evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b).[1] Merely introducing evidence

---

[1] The rule provides, in its entirety:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable

for a purpose other than character conformity or any of the other enumerated purposes in Rule 404(b) does not, by itself, make that evidence admissible. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996). Whether objected-to evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). An appellate court owes the trial judge no less deference in making this judgment than it affords him in making any other relevancy determination; that is, such a decision is reviewed for abuse of discretion. *Id*. Therefore, as long as the trial court's ruling was within the "zone of reasonable disagreement," the appellate court will not intercede. *Id.*

Moreover, by its terms, Rule 404(b) does not apply to evidence that arises in the "same transaction" as the charged offense. The Court of Criminal Appeals has therefore held that the rule does not apply to "same transaction contextual evidence," that is, to evidence that "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 1215 (1994). Such evidence "is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged." *Id.* "Circumstances of the offense which tend to prove the allegations of the indictment are not extraneous offenses." *Id.* Crimes, wrongs, or acts that are not "extraneous" to the offense charged are not subject to Rule 404(b). *See id.* at 534.

In *Camacho*, the defendant was charged with capital murder, to wit, the murder of David

---

notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

Wilburn, while in the course of committing burglary of a habitation owned by Sam Wright. The State presented evidence that, after the shooting, Camacho kidnapped Wright's wife and son and murdered them four days later in Oklahoma. *Camacho*, 864 S.W.2d at 532. On appeal, Camacho argued that admission of the evidence of the murders in Oklahoma violated Rule 404(b), because the murders were remote to the charged offense, both as to place and time. However, the Court of Criminal Appeals held the evidence of the murders in Oklahoma was "same transaction contextual evidence," because it helped establish an element of the charged offense, specifically, Camacho's intent during the burglary. *Id.* at 532. The court concluded the evidence was not within Rule 404(b) and was admissible. *Id.* at 532-35.

A person commits the offense of possession of marijuana, if he knowingly or intentionally possesses a usable quantity of marijuana. TEX. HEALTH & SAFETY CODE ANN. § 481.121(a). Proof of intent or wrongful knowledge is an essential element of the offense. *Hudson v. State*, 128 S.W.3d 367, 374 (Tex. App.--Texarkana 2004, no pet.). In this case, the State had to prove that Appellant intentionally or knowingly possessed the marijuana in the back of the SUV in which he was a passenger. The evidence surrounding the entire transaction served to illustrate Appellant's involvement in a transaction that started at the residence and included depictions of behavior that tended to show Appellant's awareness of the contents in the back of the vehicle. He was placed in the garage, where marijuana was found with packaging similar to the packaging of the marijuana found in the vehicle. All of this evidence tends to show the same continuous transaction and to demonstrate Appellant's intentional and knowing possession of the marijuana in the vehicle. Therefore, we uphold the court's ruling regarding the relevance of the evidence.[2]

---

[2] The trial court's ruling should be upheld, because this Court must uphold a trial court's ruling admitting evidence "if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). We must do so, even if the theory was not presented in

Next, we must determine whether the evidence was more prejudicial than probative. Under Rule of Evidence 403, even relevant evidence may be excluded, if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When conducting the balancing test under Rule 403, the trial court must determine whether the probative value of the evidence is substantially outweighed by one of the countervailing considerations listed in the rule. *Id.* A trial court must balance (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007).

Appellant points to the fact that there was testimony that a scale that could be used to weigh narcotics and a child's play table were found in the garage.[3] Appellant argues that these items coupled with the large amount of marijuana found in the garage prejudiced the jury beyond any probative value of the evidence. However, as stated, there was great inherent probative force of the complained-of evidence, in that it served to place the charged offense in its proper perspective. We

_____

the trial court, *Hailey v. State*, 87 S.W.3d 118, 121-22 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 1060 (2003); even if the trial judge admitted the evidence for a different, and incorrect, reason, *Laney*, 117 S.W.3d at 857; and even if the State does not urge the correct theory of admissibility on appeal. *See Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001).

[3] Thomas Downs, the evidence custodian with the Sheriff's Department, testified that he observed seven cardboard boxes in the garage, containing marijuana. There were also bundles of marijuana out of the boxes on the floor of the garage, and he saw electronic scales that were on a child's play table near the boxes.

find that using all of the above-enumerated factors, the court did not err in finding that the probative force of the evidence substantially outweighed any prejudicial effect. Accordingly, we overrule Appellant's sole issue.

## III. CONCLUSION

We affirm the judgment of the trial court.


KENNETH R. CARR, Justice

July 31, 2008

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)