

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00545-CR

Esteban Villa **RUSHER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR5975
Honorable Frank J. Castro, Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:  Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: August 10, 2022

AFFIRMED

Appellant Esteban Villa Rusher asks this court to reverse his sentences and remand his case to the trial court for a new punishment hearing because the trial court failed to instruct the jury that it could not consider evidence of extraneous acts in assessing punishment unless the State proved the acts beyond a reasonable doubt. We affirm.

## BACKGROUND

On March 7, 2019, at 9:43 p.m., Rusher entered a Valero gas station on the south side of San Antonio and "brandished a gun at the employees" after they refused to sell him alcohol because

he was too intoxicated. Before police arrived, Rusher called his father, Esteban Villa Chavez, to pick him up. Rusher told his father he was having trouble with the people at the Valero and that he "would return with his bullets." Chavez drove his son to the home they shared at 204 Lebanon. Chavez dropped off Rusher and continued down the block because he was "afraid that if [Rusher] had a gun he would threaten me to take him back to Valero." Chavez stopped about 200 feet away and "called 911 to go assist because I was afraid that he could hurt someone or someone could hurt him." While on the phone, Chavez heard shots fired. Chavez went back to his home, but Rusher was not there. He called 911 again.

Rusher, meanwhile, had begun walking down the street firing shots. Rusher shot at Sarah Lynn and Robert Gabbitas, who had just parked in front of 240 Lebanon, where they were staying with James Hernandez. Rusher also shot at James Samford, who had opened the door to his house at 309 Lebanon. And Rusher shot at Jose Pena and Catherine Fajardo, who were walking out of 323 Lebanon to their cars parked in front of the house. Remarkably, although Rusher fired shots "from the 200 block all the way down the 300 block" of Lebanon, he did not hit anyone.

Chavez's and the neighbors' calls to 911 about the shootings in progress brought police to Lebanon Street soon after 10:00 p.m. The police could not find Rusher. He returned home around 3:00 a.m. and slept in Chavez's truck. Chavez called the police, who arrested Rusher. The jury convicted him of four counts of aggravated assault and one count of deadly conduct.

During the punishment phase, the State called three witnesses: James Hernandez, Tanya Samford, and Sarah Lynn Gabbitas. All three gave victim impact testimony; none testified about uncharged conduct or extraneous acts. The jury recommended, and the trial court sentenced Rusher to, twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice on each of the four aggravated assault convictions, and ten years' confinement on the deadly conduct conviction.

**ANALYSIS**

***Jury Charge***

*Standard of Review*

The first question in analyzing a jury-charge issue is whether the charge contains error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Then, if the charge contains error, we analyze that error for harm. *Id*. "Preservation of charge error does not become an issue until we assess harm." *Id*. "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id*. "Under *Almanza*, jury charge error requires reversal when the defendant has properly objected to the charge and we find 'some harm' to his rights." *Id*. "When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id*. at 743–44. "Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id*. at 744.

*Applicable Law*

Article 36.14 of the Code of Criminal Procedure requires the trial judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "Under article 37.07, the Legislature has deemed that extraneous offense evidence is admissible for any relevant purpose during the punishment phase, but only if the State can offer proof that would allow a reasonable fact-finder to conclude, beyond a reasonable doubt, that the defendant could be held criminally responsible for that act." *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007); TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). "Article 37.07 is 'the law applicable' to all non-capital punishment proceedings. Thus, the trial judge must sua sponte instruct the jury at the punishment phase concerning that law, including the fact that the

State must prove any extraneous offenses beyond a reasonable doubt." *Delgado*, 235 S.W.3d at 252.

*Application*

Rusher's sole contention is that the trial court erred in failing to sua sponte instruct the jury at the punishment phase that the State must prove any extraneous offenses beyond a reasonable doubt. We conclude the trial court did not err by omitting a burden-of-proof instruction in the punishment charge because no extraneous offense evidence was introduced to require an instruction. First, the witnesses who testified at punishment all explained how they were impacted by Rusher's offense. The evidence was not evidence of extraneous offenses or bad acts; it was "victim impact evidence and does not require a section 3(a) burden of proof jury instruction." *Rayme v. State*, 178 S.W.3d 21, 26 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Rusher does not argue otherwise.

Second, Rusher argues that evidence introduced in the guilt-innocence phase of trial—the evidence about the incident at the Valero gas station—required the instruction. Rusher's conduct at the Valero was "same-transaction contextual evidence" intrinsic to the offense; it was not "an extraneous crime or bad act." *Worthy v. State*, 312 S.W.3d 34, 39 (Tex. Crim. App. 2010). Same-transaction contextual evidence "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). Here, the evidence about the incident at the Valero gas station showed the beginning of a continuing transaction that ended with Rusher firing his gun several times on Lebanon Street. *See id*. Therefore, it is same-transaction contextual evidence that is admissible without a limiting instruction. *Id.* at 535.

Neither the victim impact evidence, nor the same-transaction contextual evidence qualifies as extraneous offense evidence. As a result, the trial court did not err by not including a burden-

of-proof instruction at the punishment phase of trial under Article 37.07 section 3(a)(1). We overrule Rusher's single appellate argument.

## CONCLUSION

Having overruled Rusher's sole issue on appeal, we affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH