11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Juan Antonio Pantoja

Appellant

Vs.                   No.  11-02-00332-CR C Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted Juan Antonio Pantoja of theft, a state jail felony, and assessed his
punishment at 2 years confinement and a $10,000.00 fine.  We affirm.

In his
third point of error, appellant contends that the evidence is factually
insufficient to support his conviction. 
In order to determine if the evidence is factually sufficient, we must
review all of the evidence in a neutral light and determine whether the
evidence supporting guilt is so weak as to render the conviction clearly wrong
and manifestly unjust or whether the evidence supporting guilt, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283
(Tex.Cr.App.2001); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App. 1996).  We review the fact finder=s weighing of the evidence and cannot substitute our judgment for that
of the fact finder.  Cain v. State,
supra; Clewis v. State, supra. 
Due deference must be given to the jury=s determination, particularly concerning the weight and credibility of
the evidence.  Johnson v. State,
23 S.W.3d 1 (Tex.Cr.App.2000);  Jones
v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert. den=d, 522 U.S. 832 (1997).  This
court has the authority to disagree with the fact finder=s determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@  Johnson
v. State, supra.








Darren
Jackson, District Loss Prevention Manager for Home Depot, testified at trial
that, during November and December of 2001, several Home Depot stores in his
district reported that they were finding large quantities of merchandise Astaged@ in the outside garden area of the store.  Merchandise is Astaged@ when people who are planning to commit theft
gather the merchandise in one area so they can later remove the merchandise from
the store.  Jackson stated that large
quantities of hardware tools were being staged in the outside garden area.  On January 9, 2002, Jackson met with two
loss prevention associates, Steve Johnston and Troy McKenzie, to begin
investigating the activity.  Appellant
became a suspect; and Jackson, Johnston, and McKenzie set up surveillance on
appellant.

McKenzie
testified that, on January 9, 2002, at a Home Depot store in Grand Prairie, he
and Johnston saw appellant come out of the Atool corral@ with
a bucket in his arms. McKenzie said that appellant got another bucket and began
putting merchandise in that bucket. 
Appellant put both buckets in a shopping cart and began pushing the
shopping cart.  Appellant noticed
McKenzie and Johnston, took the shopping cart to the garden center, and left
the  store.  McKenzie testified that the merchandise in the bucket was the
same type of merchandise that was being Astaged@ at the Home Depot stores. 

Jackson
testified that in April he received a call from Johnston to review a
surveillance video from the Home Depot store in North Richland Hills.  Jackson said that the surveillance video
showed appellant pushing a shopping cart to the garden area of the store and
putting merchandise through the gaps in the gate.  A little while later, the surveillance video showed appellant
getting out of a car by the garden center and putting the merchandise in the
car.  As an associate approached him,
appellant got into his car and left. 

On May 7,
Jackson, McKenzie, and Johnston began following appellant.  Appellant first went to a pawn shop where he
tried to pawn a pressure washer. 
Appellant then went to a residence with the pressure washer but returned
without it.  Next, appellant went to a
Lowe=s home improvement store.  Jackson contacted the Lowe=s loss prevention department to Akeep an eye@ on appellant.  Appellant left
the store without any merchandise. 

Appellant
then went to a Home Depot in Fort Worth. 
Jackson had an associate at the store turn on the store=s video surveillance equipment to watch
appellant.  Appellant took tools and put
them in a five-gallon bucket.  Appellant
Adumped@ the bucket in the garden center and left the store.  Jackson testified that the value of the
merchandise found in the bucket was $904.73. 
On May 9, appellant went to another Home Depot in Grand Prairie.








On May 14,
Jackson, McKenzie, and Johnston continued their surveillance of appellant.  On that day, appellant went to a Wal-Mart
store where he put merchandise under the fence and later drove around in his
car and retrieved the merchandise. 
Appellant then went to a Home Depot in Mesquite.  Appellant pushed a shopping cart containing
a 32-gallon trash can into the garden area. 
Appellant circled the garden area for 45 minutes to 1 hour.  Appellant then pushed the shopping cart
through the register area and outside of the fence.  The alarm sounded, and an associate approached appellant.  Appellant pushed the cart back into the
garden area, Adumped@ the shopping cart,  and left
the store.  Appellant was apprehended
outside of the store and taken to the training room for questioning.  Jackson testified that the trash can was
full of merchandise.  Jackson also
testified that, next to the shopping cart, he found security tags that had been
torn off the merchandise.  Jackson
stated that the total cost of the merchandise recovered was $1,948.77.  

During
questioning, appellant told Jackson that he worked three days a week stealing
between $12,000.00 and $16,000.00 worth of merchandise.  Appellant said that he received about Afifty cents on the dollar@ for the merchandise.   Appellant told Jackson that his average Apay@ per day was $2,100.00. 
Appellant also told Jackson that, over the past 3 years, he had stolen
over half a million dollars from Home Depot. 


Appellant
specifically argues that the evidence is factually insufficient to support his
conviction because the Aproof that [he] actually went outside the door of the garden center is
very weak.@ 
Appellant contends that the evidence is not sufficient to show that he
intended to appropriate the merchandise. 
A person commits the offense of theft if he Aunlawfully appropriates property with intent
to deprive the owner of property.@  TEX. PENAL CODE ANN. ' 31.03(a) (Vernon 2003).  Appropriate means to Aacquire or otherwise exercise control over
property.@  TEX.
PENAL CODE ANN. ' 31.01(4)(B) (Vernon 2003).








Jackson
testified that appellant pushed a shopping cart with merchandise beyond the
cash register area Aout of
the exit@ of the store without paying for the
merchandise.  The jury saw a picture
taken from the video surveillance system which showed appellant leaving the
store with the merchandise.  Jackson
stated that appellant made no attempt to pay for the merchandise.  Viewing all of the evidence, we do not find
that the verdict is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.  Clewis
v. State, supra.  Appellant=s third point of error is overruled.

In his
first point of error, appellant argues that the trial court erred in admitting
evidence of extraneous offenses and bad acts. 
Appellant complains of eight instances where the State presented
evidence to the jury of extraneous offenses and bad acts.  Appellant contends that the evidence was not
relevant pursuant to TEX.R.EVID. 401 and that the evidence sought to show the
character of appellant and that he acted in conformity therewith.  TEX.R.EVID. 404(b).  Appellant further complains that the
probative value of the evidence was substantially outweighed by the danger of
unfair prejudice.  TEX.R.EVID. 403.  

Five of
the acts involved appellant putting merchandise into a bucket and either Adumping@ the merchandise in the store or placing the merchandise through the
fence in the garden area and later taking the merchandise.  In relation to appropriation of property,
TEX. PENAL CODE ANN. '
31.03(c)(1) (Vernon 2003) provides in part:

[E]vidence that the actor has previously
participated in recent transactions other than, but similar to, that which the
prosecution is based is admissible for the purpose of showing knowledge or
intent and the issues of knowledge or intent are raised by the actor=s plea of not guilty.  

 

Rule
404(b) also provides that evidence of other crimes, wrongs, or acts is
admissible to show Aproof
of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident.@  Pursuant to Section
31.03(c)(1) and Rule 404(b), we find that the trial court did not abuse its
discretion in admitting evidence that appellant previously put merchandise in a
bucket and Adumped@ the merchandise in the store or removed the merchandise from the
garden area. Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Cr.App.1991).  Appellant has not
shown that the probative value of admitting the evidence was substantially
outweighed by the danger of unfair prejudice. 








The other
three acts about which appellant complains involve testimony that appellant
went to a pawn shop, that appellant went to a Lowe=s home improvement store and left the store
without any merchandise, and that appellant parked next to a red pickup at a
Home Depot store and acted as if Ahe was going to take something out of the truck.@  We
find that these three instances are not evidence of other crimes, wrongs, or
acts as set out in Rule 404(b).  These
acts are not criminal in nature, nor are they inherently bad acts as
contemplated by Rule 404(b).  We find
that the trial court did not err in allowing evidence of these acts into
evidence.  Appellant=s first point of error is overruled.

In his
second point of error, appellant contends that the trial court erred in finding
the State=s strike of a potential juror to be racially
neutral.    In Purkett v. Elem,
514 U.S. 765 (1995), the Supreme Court delineated the three‑step process
for properly determining a Batson[1]
challenge.  First, the opponent of a
peremptory challenge must make out a prima facie case of racial discrimination,
essentially a burden of production.  In
the second step, the burden of production shifts to the proponent of the strike
to respond with a race‑neutral explanation.  Third, if a race‑neutral explanation has been proffered,
the trial court must decide whether the opponent of the strike has proved
purposeful racial discrimination.  The
burden of persuasion is on the opponent of the strike to convince the trial
court that the strike was racially motivated. 
Purkett v. Elem, supra; Ford v. State, 1 S.W.3d 691, 693
(Tex.Cr.App.1999); Camacho v. State, 864 S.W.2d 524, 529
(Tex.Cr.App.1993), cert. den=d, 510 U.S. 1215 (1994).  

The record
reflects that appellant objected to the State=s strike of Veniremember No. 21, arguing that the State exercised its
peremptory challenge based solely upon the potential juror=s race. 
The State responded that Veniremember No. 21 was struck because of
remarks he made in response to appellant=s trial counsel=s question about being a victim of theft.  The State said that Veniremember No. 21 Aindicated that he was a victim of theft but,
in his response to that question, indicated by his demeanor that he didn=t care about theft as long as he was not the
particular victim.@  The State felt that Veniremember No. 21
would not be Avery harsh on punishment for theft.@ 
Appellant=s trial counsel responded that Athose are not reasons to strike somebody;
therefore, I=m saying they used his race solely as the
reason to strike him.@ 

The State
then added that Veniremember No. 21 was very young and that it routinely
strikes potential jurors under the age of 25 in felony cases.  The State said that someone 21 years old
does not have Aenough life experience@ to sit on a jury.  Appellant did not offer any further argument.








We find
that the State provided a race-neutral explanation for exercising its peremptory
strike against Veniremember No. 21. 
Young age constitutes a race‑neutral explanation for the exercise
of a peremptory strike.  Camacho v.
State, supra; Malone v. State, 939 S.W.2d 782 (Tex.App. ‑
Houston [14th  Dist.] 1997, no pet=n). 
We hold that the trial court=s determination on the Batson issue was not clearly
erroneous.  See Chamberlain v. State,
998 S.W.2d 230, 236 (Tex.Cr.App.1999), cert. den=d, 528 U.S. 1082 (2000). 
Appellant=s second point of error is overruled. 

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE

 

September 4, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











[1]Batson v. Kentucky, 476 U.S. 79 (1986).