

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00115-CR

**JOSE ISABEL LOPEZ, JR.,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 40th District Court
Ellis County, Texas
Trial Court No. 34503CR**

## MEMORANDUM OPINION

A jury found Appellant Jose Isabel Lopez, Jr., guilty of felony DWI and assessed his punishment, enhanced by two prior felony DWIs, at thirty-two years' confinement. This appeal ensued. We will affirm.

### Sufficiency

We begin with Lopez's sixth issue, in which he contends that the evidence is insufficient to establish the element of intoxication beyond a reasonable doubt.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 2712 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. 307 at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A person commits the offense of felony DWI if he operates a motor vehicle in a public place while intoxicated, and has previously been convicted two times of any other offense relating to the operating of a motor vehicle while intoxicated. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b) (West Supp. 2012). "Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A) (West 2011).

Sergeant Michael Boyd testified that he has been a certified peace officer since 1994 and has worked with the Ellis County Sheriff's Department since 2001. He took a standardized field-sobriety class in 2002 and an update class in 2009. In those classes, he was trained and certified to conduct the standard field-sobriety tests.

At about 3 a.m. on August 2, 2009, Boyd observed Lopez's vehicle fail to stop at a stop sign. Boyd activated his emergency lights to conduct a traffic stop. Lopez did not stop immediately; rather, he drove on for "maybe a block" but then pulled over in a driveway. As Boyd approached Lopez's vehicle on the driver's side, he could smell alcohol and noticed alcohol containers in the back seat of the vehicle. As Boyd got to the driver's side door, he could also see an open container in the cup holder. Boyd started to talk to Lopez and noticed that Lopez's speech was slurred and that his eyes were glassy. Boyd asked Lopez if he had been drinking, and Lopez replied that he had been. When Lopez got out of the car to perform the field-sobriety tests, he was "staggering a little bit."

Boyd had Lopez first perform the horizontal gaze nystagmus (HGN) field-sobriety test. Boyd testified, "That's basically you hold a stimulus 12 to 15 inches slightly elevated from the face and make several passes. You're basically looking for involuntary jerking of the eye." Involuntary jerking, or nystagmus, is not visible to the naked eye unless there is alcohol present. Boyd observed nystagmus in Lopez's eyes. He was looking for a total of six "clues" in that test, and Lopez had six clues. When asked what type of clues he was looking for, Boyd replied, "I'm looking for a distinctive sustained nystagmus at 45 degrees. Basically, you hold the stimulus at a set point and his eyes will be totally turned, and you're looking for just a slight jerking." Boyd also said, "I was looking for an onset prior to 45 degrees. Basically, as you move the stimulus, before you get all the way out to 45 degrees, you're looking for just a little -- little jerk in the eye."[1] Boyd stated that unless he had "some sort of medical reason, head injury, something like that," Boyd would not be able to see the jerking if Lopez did not have alcohol or other substances in his body. Lopez did not indicate to Boyd that he had a head injury, had been in a car accident, or anything like that.

Boyd then had Lopez perform the walk-and-turn test. Boyd described the walk-and-turn test as follows: "Basically, they walk heel-to-toe in a single file line nine paces, take several small steps, take nine paces back, keeping their hands down to their side looking at their toes and counting out loud." It is considered a divided-attention test because the person is dividing his attention between a physical task and a mental task.

---

[1] Boyd then explained that there is also vertical nystagmus where "[i]t's basically move the stimulus up, and as their eyes go to the top, you'll notice another little jerk." Boyd did not look for vertical nystagmus, however, and it is not part of the standard.

Boyd instructed and demonstrated to Lopez how to do the test. Lopez indicated that he understood. When asked how Lopez performed on the test, Boyd replied,

> He took too many paces, you know, used his hands a little for balance. He had a hard time following instructions. You know, as I -- there's an instruction phase where you -- you have them stand on the line heel-to-toe and wait for further instructions. He wasn't able to do that. He kept stepping off line. Took an improper turn.

Boyd then offered Lopez the one-leg stand test. Boyd described the test as follows: "Basically, you pick either leg you want, you raise it six inches, you stare at your toes, count out loud keeping your hands down to your side. The test takes about 30 seconds to perform." It is also a divided-attention test. Boyd said that Lopez raised his leg up once, stopped, and then started pleading with Boyd that "he was going to a residence right there and was unable to finish the test." Boyd arrested Lopez for driving while intoxicated. Boyd testified that he felt Lopez was intoxicated because he did not have the use of his mental and physical faculties.

When asked if Boyd found anything else that was interesting during the stop, Boyd replied that there were narcotics located in plain view next to the driver's seat in Lopez's vehicle. Boyd said that he was an undercover narcotics officer for approximately one year, so he is familiar with different kinds of controlled substances. He believed the substance to be cocaine. Jennifer Rumpee, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Garland, later testified that the drug specimen in fact contained cocaine and weighed 0.44 grams. On cross-examination, Boyd stated that he did not take fingerprints off the baggy he found with

the drugs in it. He does not know who owned the vehicle that Lopez was driving, and if it was somebody else's vehicle, it is possible that it was not Lopez's drugs.

Boyd stated that after reading Lopez the statutory warnings, Lopez initially agreed to provide a breath sample. But during the twenty to twenty-five-minute ride to the county jail, Lopez was very belligerent in the vehicle and was making racial comments to Boyd and the other deputy in the vehicle. Lopez seemed to get more aggressive the closer that they got to the jail. Once in the intoxilyzer room, Lopez refused to provide a breath sample.

The State offered and the trial court admitted into evidence an audio/video recording of the traffic stop, including Lopez's ride to the jail.

Lopez argues that the foregoing evidence is insufficient to prove that he did not have the normal use of his mental or physical faculties because Boyd's testimony about the field-sobriety tests was incorrect and incomplete and because his counsel was ineffective for not correcting it on cross-examination. We will address Lopez's ineffective assistance of counsel claims below. But in determining whether the evidence is sufficient, we must still consider Boyd's testimony. *See Lucio*, 351 S.W.3d at 894 ("In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider *all* of the evidence . . . .") (emphasis added).

Here, Boyd testified that he believed that Lopez was intoxicated because he did not have the use of his mental and physical faculties. The jurors also had the opportunity to observe Lopez's demeanor and conduct from the night of the stop because they were shown an audio/video recording of the traffic stop, including

Lopez's ride to the jail. By finding Lopez guilty, the jury obviously agreed with Boyd's opinion that Lopez did not have the normal use of his mental and physical faculties and was therefore intoxicated. *See Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)) ("[T]he jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony.").

We "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Viewing all the evidence in the light most favorable to the verdict, we thus conclude that the evidence is sufficient to support Lopez's conviction. We overrule Lopez's sixth issue.

### Motion for New Trial Hearing

In his first issue, Lopez contends that the trial court violated the 5th, 6th, and 14th Amendments to the United States Constitution and Article I, Sections 10, 13, and 19 of the Texas Constitution by failing to allow a hearing on his motion for new trial. Lopez also argues that the trial court abused its discretion in denying the hearing because it denied him the ability to fully argue on appeal the ineffectiveness of his trial counsel.[2]

---

[2] The State initially responds that no constitutional violation is presented for review because Lopez provides no argument or authority regarding any constitutional violation. We agree. To the extent Lopez contends that the trial court violated the federal and state constitutions by failing to conduct a hearing on his motion for new trial, the complaint is inadequately briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(h), (i).

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion; we reverse only if the decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The purposes of a hearing on a motion for new trial are (1) to determine whether the case should be retried and (2) to prepare a record for presenting issues on appeal if the motion is denied. *Id.* at 338. A hearing on a motion for new trial is not an absolute right. *Id.* A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Id.* But a trial judge abuses his discretion in failing to hold a hearing on a motion for new trial when the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009).

To establish the existence of reasonable grounds showing he could be entitled to relief, the defendant is required to support his motion for new trial with an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim. *Smith*, 286 S.W.3d at 339. The affidavit need not establish a *prima facie* case, or even reflect every component legally required to establish relief. *Id.* It is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim. *Id.* But affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required. *Id.*

Lopez filed a motion for new trial complaining that his trial counsel provided ineffective assistance. To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficiency under the first prong of the *Strickland* test, the appellant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms. *Smith*, 286 S.W.3d at 340. To show prejudice, the appellant must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

*Allowing Cocaine Evidence to Be Admitted Without Objection*

In his motion for new trial, one of Lopez's main complaints was that his counsel rendered ineffective assistance because she let Lopez's DWI trial turn into a possession of cocaine trial. Specifically, Lopez argues that his counsel rendered ineffective assistance because (1) she did not file a motion to suppress the cocaine found in the car Lopez was driving; (2) the trial judge told the State and the defense to bring the issue of the admissibility of the cocaine to his attention before it was offered as evidence, and Lopez's counsel did not object when the prosecutor immediately violated the trial court's ruling by bringing up the issue of drugs during the State's opening statement; (3) later, and again without abiding by the trial court's instruction, the State offered the cocaine itself as evidence without objection by Lopez's counsel; (4) the narcotics officer testified about the cocaine without objection from Lopez's counsel; and (5) Lopez's counsel brought up the issue of drugs herself after previously arguing that they should not be admissible.

These complaints raised matters that were not determinable from the record because the reasonableness of counsel's choices involves facts that do not appear in the record. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) ("Generally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard. The reasonableness of counsel's choices often involves facts that do not appear in the appellate record." (footnotes omitted)). The issue then is whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief. *See Hobbs*, 298 S.W.3d at 199.

Lopez supported his motion for new trial with four affidavits. The first two were those of Lopez's mother, Gloria Lynn, and Lopez's girlfriend, Yisel Zavala. Both women averred that Lopez's counsel told them that she had never handled a case like Lopez's before and that "this was her first time." Lynn added that Lopez's counsel did not appear to be effective, and she did not allow Lopez to participate in his own defense. Zavala also asserted that she had watched the entire jury trial, it did not appear that Lopez's counsel was an effective attorney or knew what she was doing, and Lopez's counsel never argued anything that Lopez asked her to argue.

The third affidavit was that of Lopez. He averred that many times he asked his counsel to do things on behalf of his defense that she did not do. His counsel "let the prosecutor say whatever she wanted during the trial" without objection. Lopez heard his counsel tell the trial judge that "she did not want evidence of the drugs coming into the trial," but she did not object when the drugs were brought up, and she even mentioned the drugs herself on more than one occasion. Any suggestion he made regarding his defense was disregarded by his counsel. He believes that his counsel was ineffective and too inexperienced to handle his case; therefore, he believes that he was denied a fair trial. His counsel should have told him when he hired her that she had no experience with his type of case, but she did not. He could not believe that she told the jury in the opening statement that he would testify when that decision had not been made. He has read the motion for new trial to which his affidavit is attached, and each and every statement is true and correct to the best of his knowledge.

The fourth affidavit was that of Monica Bishop, an attorney employed by the law firm retained to represent Lopez with regard to his motion for new trial and appeal. Bishop asserted that after having read the trial transcript in Lopez's case, it is her opinion that Lopez's counsel failed to protect his constitutional and statutory rights at every phase of the trial. Unlike an effective defense attorney, Lopez's counsel failed in the pretrial phase to challenge inadmissible evidence that was to be offered by the State. These failures caused Lopez's statutory and constitutional rights to be abandoned by his counsel. Throughout the evidentiary phase of the trial, Lopez's counsel failed to protect Lopez's rights by failing to object a single time. Lopez's counsel abandoned him and preserved nothing for appeal by failing to object to inadmissible evidence, illegal questions by the State, procedural deficiencies by the State, and illegal responses by witnesses. There can be no strategic reason for a defense attorney not to preserve issues for appeal; thus, the behavior and lack of behavior by Lopez's counsel constituted ineffective assistance. Bishop also averred that she read the motion for new trial to which her affidavit was attached and that each and every statement is true and correct to the best of her knowledge.

None of these affidavits provided the trial court with sufficient facts from which the court could have reasonably concluded that counsel's performance was deficient with regard to the cocaine evidence, and then that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's trial would have been different. Lopez complains in his motion and affidavit that his counsel improperly allowed the drug evidence to be admitted without objection, but he does not provide any facts in his

own or someone else's affidavit from which the court might determine that the drug evidence was in fact inadmissible. Without facts from which the trial court could reasonably determine that the drug evidence was inadmissible, the trial court could not reasonably conclude that Lopez's counsel was potentially deficient and his defense potentially prejudiced by the admission of the drug evidence without objection.

More specifically, Lopez has not provided any facts to support a determination that he was stopped without reasonable suspicion or that he was arrested without probable cause. Instead, as argued in his appellate brief, Lopez contends that the drug evidence was irrelevant extraneous-offense evidence, impeachment on a collateral matter, and/or evidence that was more prejudicial than probative. We disagree.

"Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Rule 402 states: "All relevant evidence is admissible, except as otherwise provided . . . by these rules . . . . Evidence which is not relevant is inadmissible." TEX. R. EVID. 402. Rule 404(b) states: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b).

Lopez argues that, in his felony DWI trial, evidence that he possessed a controlled substance was irrelevant and extraneous-offense evidence inadmissible under Rule 404(b) because the evidence was not necessary to prove any material elements of the offense. But the indictment alleged that Lopez "did then and there

operate a motor vehicle in a public place while intoxicated." And as stated above, "intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, *a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances, or any other substance into the bod*y." TEX. PENAL CODE ANN. § 49.01(2)(A) (emphasis added). Thus, evidence that cocaine was located in plain view next to the driver's seat in the vehicle Lopez was driving was relevant to prove the State's allegation in the indictment that Lopez was intoxicated. *See Cook v. State*, No. 12-05-201-CR, 2006 WL 1633250, at *2 (Tex. App.—Tyler Jun. 14, 2006, no pet.) (mem. op., not designated for publication). Furthermore, because the possession of cocaine evidence went to a material element of the State's case, it was not an extraneous offense. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) ("Circumstances of the offense which tend to prove the allegations of the indictment are not extraneous offenses." (citing *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991))). And the cocaine evidence could not be considered evidence of a collateral matter that the State was using to impeach a witness.

We thus turn to Lopez's argument that the drug evidence should have been inadmissible because it was more prejudicial than probative. Under Rule 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

[A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (quoting

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted)).

*Probative force of the evidence*: As just explained, evidence that cocaine was located

in plain view next to the driver's seat in the vehicle Lopez was driving was relevant to

prove the State's allegation in the indictment that Lopez was intoxicated. *See Cook*, 2006

WL 1633250, at *2. This factor thus weighs in favor of admissibility.

*Proponent's need for that evidence*: As detailed above in the sufficiency discussion,

there was other evidence that Lopez was intoxicated. The cocaine evidence, however,

was the only evidence that the State had that Lopez was under the influence of a

substance besides alcohol. Furthermore, the predominant issue in dispute at trial was

whether Lopez was intoxicated. This factor thus weighs in favor of admissibility.

*Tendency of evidence to suggest a decision on an improper basis*: Possession of cocaine

is a criminal offense, *see* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a)

(West 2010), and people may attach extremely negative associations to the possession of

cocaine. On the other hand, the amount of cocaine in question in this case was very

small, 0.44 grams, and the State presented the jury with an audio/video recording of the traffic stop to support that Lopez was intoxicated. This factor weighs neutrally.

*Jury confusion or distraction, undue weight, and amount of time or repetition*: These factors concern whether presentation of the evidence consumed an inordinate amount of time or was repetitive, and the evidence's tendency to confuse or distract the jury or to cause the jury to place undue weight on its probative value. *See Gigliobianco*, 210 S.W.3d at 641-42; *Newton*, 301 S.W.3d at 320. The cocaine evidence was presented in about thirteen pages of the reporter's record. It was also mentioned briefly during opening statements, and there was some discussion of the cocaine evidence during closing arguments. The cocaine evidence, however, was not repetitive, and we do not believe that it could cause jury confusion or distraction or cause the jury to give it undue weight. All of these factors thus favor admission.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the cocaine evidence and its probative value.

Therefore, as stated above, Lopez's motion and affidavits did not provide the trial court with sufficient facts from which the court could have reasonably concluded that counsel's performance was deficient with regard to the cocaine evidence and that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's

trial would have been different. Thus, Lopez's motion and affidavits did not establish reasonable grounds showing that he could potentially be entitled to relief with regard to his complaint that his counsel rendered ineffective assistance because she did not object to the cocaine evidence. Accordingly, the trial judge did not abuse his discretion in choosing not to hold a hearing on the motion for new trial based on this complaint.

*Reminding Jury That Lopez Had Two Previous DWI Convictions*

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because she reminded the jury that he had two previous DWI convictions. Again, the record does not establish the reasonableness of Lopez's counsel's choices to mention the previous DWI convictions as she did; therefore, this complaint raised matters that were not determinable from the record. The issue once again then is whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief.

The only portions of the supporting affidavits that might be considered relevant to whether Lopez established his entitlement to relief on this specific complaint are Lynn's and Zavala's statements that Lopez's counsel did not appear to be effective, the statement in Lopez's own affidavit that he believes that his counsel was ineffective, and Bishop's assertion that after having read the trial transcript in Lopez's case, she opined that Lopez's counsel failed to protect Lopez's constitutional and statutory rights at every phase of the trial. But these statements are conclusory in nature and unsupported by facts; therefore, they do not provide the requisite notice of the basis for the relief claimed. *See Smith*, 286 S.W.3d at 339. Furthermore, even if we assume from the

foregoing that counsel's performance was deficient in mentioning Lopez's two previous DWI convictions, Lopez's motion and affidavits did not provide the trial court with sufficient facts from which the court could have reasonably concluded that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's trial would have been different.

The record shows that Lopez stipulated to the two previous DWI convictions; nevertheless, the State mentioned the previous DWI convictions several times throughout the trial. At the beginning of Lopez's trial, the State read the indictment to the jury, mentioning the two jurisdictional prior DWI convictions. *See Tamez v. State*, 11 S.W.3d 198, 202 (Tex. Crim. App. 2000). Thus, the jury was informed of the precise terms of the charge against the accused. *See id.* The State also briefly mentioned in its opening statement that the jury would hear evidence that Lopez had been convicted of a DWI offense twice before. During the State's case-in-chief, Lopez's stipulation of evidence regarding the two prior DWI convictions was then admitted. *See Hollen v. State*, 117 S.W.3d 798, 801-02 (Tex. Crim. App. 2003) (holding that stipulation itself is allowed into evidence to make jury aware of the two previous DWI convictions). The State also mentioned in its closing argument that it had proven that Lopez has two prior convictions because Lopez had so stipulated. *See id.* at 802 ("Since the two prior offenses were validly mentioned in the indictment and validly introduced into evidence via the stipulation, . . . the prior convictions were the legitimate subject of voir dire, opening statements, and closing arguments."). Moreover, Lopez himself even mentioned on the audio/video recording that he had previous DWI convictions.

Because the State was allowed to make the jury aware of Lopez's two previous DWI convictions and Lopez himself even mentioned the convictions on the recording, Lopez's counsel's mention of the two previous DWI convictions would be considered harmless even if improperly admitted. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."). Thus, Lopez's motion and affidavits did not establish reasonable grounds showing that he could potentially be entitled to relief with regard to the complaint that his counsel rendered ineffective assistance because she reminded the jury that he had two previous DWI convictions. Accordingly, the trial judge did not abuse his discretion in choosing not to hold a hearing on the motion for new trial with regard to the complaint.

*Failing to File Any Pretrial Motions*

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because she did not file any pretrial motions. The State replied in its response to Lopez's motion for new trial that although Lopez's counsel may not have filed any pretrial motions in this particular case, she did file pretrial motions in Lopez's companion case, and they were heard for both causes.

The clerk's record before us contains two pretrial motions filed by Lopez's counsel—a "Motion in Limine Regarding Opinion Testimony on Chemical Test" and a "Motion to Sever Offenses." The clerk's record also contains orders granting the two motions. Furthermore, the reporter's record of the final pretrial hearing does indicate

that several pretrial motions were heard for both causes. The trial court made the following rulings at the final pretrial hearing: (1) the defense's request for notice of the State's intention to use evidence of extraneous offenses at the trial was denied except to the extent it was already covered by the court's standing pretrial order; (2) the defense's motion to sever was granted; (3) the defense's motion for continuance was moot since the parties had already submitted an agreed motion; (4) the defense's motion for discovery was denied except to the extent it was already covered by the court's standing pretrial order; (5) the defense's motion in limine concerning the "field test" was denied except to the extent it was already covered by the court's standing pretrial order; (6) the defense's motion in limine regarding testimony on the "chemical test" was granted; and (7) the defense's motion invoking "the Rule" was granted.[3]

Nevertheless, the record does not establish the reasonableness of Lopez's counsel's choices not to file other pretrial motions; therefore, once again, this complaint in the motion for new trial raised matters that were not determinable from the record. We thus turn once again to the issue of whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief.

The only portions of the supporting affidavits that might be considered relevant to whether Lopez established his entitlement to relief on this specific complaint are Lynn's and Zavala's statements that Lopez's counsel did not appear to be effective, the statement in his own affidavit that he believes that his counsel was ineffective, and

---

[3] The State clarified in its response to the motion for new trial that "a motion to suppress and a motion in limine" were related only to Lopez's companion case.

Bishop's assertions that she opined that Lopez's counsel failed to protect Lopez's constitutional and statutory rights at every phase of the trial, that unlike an effective defense attorney, Lopez's counsel failed in the pretrial phase to challenge inadmissible evidence that was to be offered by the State, and that these failures caused Lopez's statutory and constitutional rights to be abandoned by his counsel. But again, these statements are conclusory in nature and unsupported by facts; therefore, they do not provide the requisite notice of the basis for the relief claimed. *See Smith*, 286 S.W.3d at 339. The only *specific* pretrial motion that Lopez complained about not being filed was a motion to suppress the cocaine found in the car he was driving. But, as explained above, Lopez's motion and affidavits did not provide any facts from which the court might determine that the cocaine evidence was in fact inadmissible.

Therefore, considering that the record establishes that the trial court did consider some pretrial motions in this case, the record shows that the trial court had entered a lengthy standing pretrial order, and Lopez did not identify any other specific pretrial motions that he believed should have been filed, we conclude that the trial court could not have reasonably concluded that Lopez's defense was potentially prejudiced by counsel's failure to file any other pretrial motions. Thus, even if we assume that counsel's performance was deficient with regard to the filing of pretrial motions, Lopez's motion and affidavits did not provide the trial court with sufficient facts from which the court could have reasonably concluded that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's trial would have been different. Lopez's motion and affidavits thus did not establish reasonable grounds showing that

he could potentially be entitled to relief with regard to his complaint that his counsel rendered ineffective assistance because she did not file any pretrial motions. Accordingly, the trial court did not abuse its discretion by not holding a hearing on the motion for new trial based on the complaint.

### Failing to Request 702 Hearing

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because, when Boyd began to testify about the HGN test administration, his counsel did not ask for a 702 hearing to challenge the science and the application of the science by the officer. Again, the record does not establish the reasonableness of Lopez's counsel's choice not to ask for a 702 hearing; therefore, once again, this complaint raised matters that were not determinable from the record. We thus turn once again to the issue of whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief.

The only portions of the supporting affidavits that might be considered relevant to whether Lopez established his entitlement to relief on this specific complaint are Lynn's and Zavala's statements that Lopez's counsel did not appear to be effective, the statement in his own affidavit that he believes that his counsel was ineffective, and Bishop's assertion that she opined that Lopez's counsel failed to protect his constitutional and statutory rights at every phase of the trial. But as stated above, these statements are conclusory in nature and unsupported by facts; therefore, they do not provide the requisite notice of the basis for the relief claimed. *See Smith*, 286 S.W.3d at 339. Furthermore, even if we assume from the foregoing that counsel's performance

was deficient by not asking for a 702 hearing, Lopez's motion and affidavits did not provide the trial court with sufficient facts from which the court could have reasonably concluded that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's trial would have been different.

Boyd's testimony did not suggest that Lopez's HGN test results translated into a specific blood alcohol content, nor did Boyd's testimony suggest that the test results indicated that Lopez no longer had the normal use of his mental or physical faculties. Rather, Boyd's testimony limited the implication of the HGN test results to the presence of alcohol or other substances in his system. And there is overwhelming evidence that Lopez had alcohol or other substances in his system. Boyd could smell alcohol as he approached Lopez's vehicle that night. Boyd found alcohol containers in the back seat of the vehicle, an open container in the cup holder, and cocaine in plain view next to the driver's seat. Boyd also asked Lopez if he had been drinking, and Lopez admitted that he had. Moreover, as explained in the defense's opening statement, Lopez was not refuting at trial that he drank some alcohol that night. Instead, the defense's argument was that Lopez was not intoxicated because, despite having had some alcohol to drink, he still had the normal use of his mental or physical faculties.

For these reasons, Lopez's motion and affidavits did not establish reasonable grounds showing that he could potentially be entitled to relief with regard to his complaint that his counsel was ineffective for not asking for a 702 hearing. Accordingly, the trial court did not abuse its discretion by not holding a hearing on the motion for new trial based on this complaint.

*Failing to Reference That Officer Did Not Look for Vertical Nystagmus*

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because Boyd testified that he did not look for vertical nystagmus, which is commonly used to determine if illegal drugs are causing the perceived intoxication, and Lopez's counsel made no reference to this at any time. Again, the record does not establish the reasonableness of Lopez's counsel's choice not to reference that Boyd did not look for vertical nystagmus; therefore, once again, this complaint raised matters that were not determinable from the record. We look again at the issue of whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief.

The only portions of the supporting affidavits that might be considered relevant to whether Lopez established his entitlement to relief on this specific complaint are Lynn's and Zavala's statements that Lopez's counsel did not appear to be effective, the statement in his own affidavit that he believes that his counsel was ineffective, and Bishop's assertion that she opined that Lopez's counsel failed to protect his constitutional and statutory rights at every phase of the trial. But again, these statements are conclusory in nature and unsupported by facts; therefore, they do not provide the requisite notice of the basis for the relief claimed. Furthermore, even if we assume from the foregoing that counsel's performance was deficient by failing to reference that Boyd did not look for vertical nystagmus, Lopez's motion and affidavits did not provide the trial court with sufficient facts from which the court could have reasonably concluded that, if Lopez's counsel had made references to the fact that Boyd

did not look for vertical nystagmus, there was a reasonable likelihood that the outcome of Lopez's trial would have been different.

Boyd did not testify that vertical nystagmus is commonly used to determine if illegal drugs are causing the perceived intoxication. Nor did Boyd testify that he chose not to look for vertical nystagmus in Lopez's eyes because he did not believe Lopez had used illegal drugs. Rather, the extent of Boyd's testimony about vertical nystagmus was simply that "[i]t's basically move the stimulus up, and as their eyes go to the top, you'll notice another little jerk," that a vertical nystagmus test is not part of the standard field-sobriety tests, and that Boyd did not look for vertical nystagmus in Lopez's eyes.

Thus, Lopez's motion and affidavits did not establish reasonable grounds showing that he could potentially be entitled to relief with regard to his complaint that his counsel was ineffective for failing to reference that Boyd did not look for vertical nystagmus. Accordingly, the trial court did not abuse its discretion by not holding a hearing on the motion for new trial based on this complaint.

*Failing to Challenge Field Sobriety Tests*

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because, in her cross-examination of Boyd, she did not challenge any of the field-sobriety tests or the manner in which they were administered. Again, the record does not establish the reasonableness of Lopez's counsel's choice; therefore, once again, this complaint raised matters that were not determinable from the record. The issue once again then is whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief.

The only portions of the supporting affidavits that might be considered relevant to whether Lopez established his entitlement to relief on this specific complaint are Lynn's and Zavala's statements that Lopez's counsel did not appear to be effective, the statement in his own affidavit that he believes that his counsel was ineffective, and Bishop's assertion that she opined that Lopez's counsel failed to protect his constitutional and statutory rights at every phase of the trial. But again, these statements are conclusory in nature and unsupported by facts; therefore, they do not provide the requisite notice of the basis for the relief claimed. *See Smith*, 286 S.W.3d at 339. Furthermore, even if we assume from the foregoing that counsel's performance was deficient by failing to properly cross-examine Boyd regarding the field-sobriety tests, Lopez's motion and affidavits did not provide the trial court with sufficient facts from which the court could have reasonably concluded that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's trial would have been different.

We already discussed above the limited impact of Boyd's testimony about the HGN test. Boyd's testimony limited the implication of the HGN test results to the presence of alcohol or other substances in Lopez's system, and there is overwhelming evidence that Lopez had alcohol or other substances in his system. Moreover, the defense's main argument was not that Lopez had had nothing to drink that night but that Lopez was not intoxicated because, despite having had some alcohol to drink, he still had the normal use of his mental or physical faculties. Additionally, the impact of Boyd's testimony about all of the field-sobriety tests was limited because the jurors

were shown the audio/video recording of the traffic stop. The recording allowed the jurors to see Lopez's behavior and decide for themselves whether he had the normal use of his mental and/or physical faculties that night.

Thus, Lopez's motion and affidavits did not establish reasonable grounds showing that he could potentially be entitled to relief with regard to his complaint that his counsel was ineffective for failing to properly cross-examine Boyd regarding the field-sobriety tests. Accordingly, the trial court did not abuse its discretion by not holding a hearing on the motion for new trial based on this complaint.

*Telling Jury Lopez Would Testify But Then Putting on No Evidence*

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because she told the jury in the defense's opening statement that Lopez would testify but then rested without putting on any evidence. Lopez stated in his affidavit in support of this complaint that he could not believe that his counsel told the jury in the opening statement that he would testify when that decision had not been made. The State submitted with its response to Lopez's motion for new trial an affidavit of Lopez's trial counsel responding to this specific complaint. Lopez's trial counsel asserted:

> The defendant was going to testify, that is why I mentioned he would in my opening statement. After the police officer testified I looked at the defendant, thinking at that point he should not testify because the police officer did not do a good job showing that the defendant was intoxicated; I then asked the defendant if he still wanted to testify, he immediately and without hesitation said "no, I feel really good about how things are going right now". [sic] I said, "good, that is exactly what I was thinking". [sic] My thinking also was that we had an advantage because

we got to say what the defendant would have said in opening anyway and he did testify in the sentencing phase.

A trial court has discretion to decide a motion for new trial based on affidavits alone, particularly where the affiants have already appeared in the trial court and "the trial judge ha[s] already had an opportunity to evaluate the affiants" and is "familiar with the history and the facts of the case." *See Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006). Here, the trial judge who denied the motion for new trial conducted the trial, so he had already had an opportunity to evaluate the affiants, Lopez and his trial counsel, and he was familiar with the history and the facts of the case. The trial court therefore did not abuse its discretion by deciding the motion for new trial on the affidavits even though Lopez requested a hearing.

Furthermore, unlike with Lopez's other complaints in his motion for new trial, the record with regard to this complaint does reveal counsel's strategy and reasoning because the record includes counsel's affidavit responding to the complaint. The trial court is the sole factfinder and judge of appellant's and his counsel's credibility in deciding the motion for new trial. *Riley v. State*, 378 S.W.3d 453, 459 (Tex. Crim. App. 2012). Thus, the trial court did not have to accept Lopez's claim that he had not decided whether to testify when his counsel told the jury during the defense's opening statement that he would testify. Rather, the trial court was free to accept counsel's explanation and therefore conclude that her representation of Lopez was not deficient based on this complaint and that she did not render ineffective assistance with regard to this complaint. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Smith*, 286 S.W.3d at 340.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by not holding a hearing on the motion for new trial based on Lopez's complaint that his counsel rendered ineffective assistance because she told the jury in the defense's opening statement that Lopez would testify but then rested without putting on any evidence. The complaint was determinable from the record. *See Hobbs*, 298 S.W.3d at 199.

*Failing to Object to Leading Questions*

Lopez also complained in his motion for new trial that his counsel rendered ineffective assistance because Lopez's counsel did not object to any of the forty-one leading questions during the trial. The record does not establish the reasonableness of Lopez's counsel's choice; therefore, this complaint raised matters that were not determinable from the record. The issue then is whether Lopez's motion and affidavits showed reasonable grounds that could entitle him to relief.

The portions of the supporting affidavits that might be considered relevant to whether Lopez established his entitlement to relief on this specific complaint are Lynn's and Zavala's statements that Lopez's counsel did not appear to be effective, the statements in his own affidavit that he believes that his counsel was ineffective and that his counsel "let the prosecutor say whatever she wanted during the trial" without objection, and Bishop's assertions that she opined that Lopez's counsel failed to protect his constitutional and statutory rights at every phase of the trial, that throughout the evidentiary phase of the trial, Lopez's counsel failed to protect his rights by failing to object a single time, that Lopez's counsel abandoned him and preserved nothing for

appeal by failing to object to "illegal" questions by the State, and that there can be no strategic reason for a defense attorney not to preserve issues for appeal; thus, the behavior and lack of behavior by Lopez's counsel constituted ineffective assistance. As stated above, many of these statements are conclusory in nature and unsupported by facts; therefore, they do not provide the requisite notice of the basis for the relief claimed. *See Smith*, 286 S.W.3d at 339. Moreover, none of the affidavits provided the trial court with sufficient facts from which the court could have reasonably concluded that counsel's performance was deficient because she did not object to forty-one leading questions during trial, and then that, but for counsel's errors, there was a reasonable likelihood that the outcome of Lopez's trial would have been different.

Leading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back. *Tinlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd). Rule of Evidence 611(c) prohibits leading questions on direct examination "except as may be necessary to develop the testimony of the witness." TEX. R. EVID. 611(c). The rule thus contemplates that some leading questions are acceptable at the trial court's discretion. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000). To establish that a trial court abused its discretion, an appellant must show the question resulted in undue prejudice. *Id.*

Lopez complains in his motion and affidavits that his counsel did not object to forty-one leading questions during trial, but he does not specifically identify any of the questions. Thus, the trial court could not reasonably conclude that Lopez's counsel was potentially deficient by not objecting to the questions. Further, Lopez complains in his

motion and affidavits that he is harmed because the failure to object to the questions means that his issues are not preserved for appeal. But without facts from which the trial court could reasonably determine that the objections would have been valid and that Lopez was unduly prejudiced by virtue of the questions, the trial court could not reasonably conclude that Lopez's defense was potentially prejudiced by the leading questions.

Thus, Lopez's motion and affidavits did not establish reasonable grounds showing that he could potentially be entitled to relief with regard to his complaint that his counsel rendered ineffective assistance because she did not object to any of the forty-one leading questions during the trial. Accordingly, the trial judge did not abuse his discretion in choosing not to hold a hearing on the motion for new trial based on this complaint.

Having concluded that the trial judge did not abuse his discretion in choosing not to hold a hearing on Lopez's motion for new trial based on any of his complaints, we overrule Lopez's first issue.

**Evidentiary Issues**

In his second issue, Lopez contends that the trial court erred by admitting irrelevant evidence of his unadjudicated extraneous offense of possession of a controlled substance and by allowing the jury to receive evidence detrimental to Lopez that was not admitted during the trial. In his third issue, Lopez contends that the trial court erred by admitting evidence of his unadjudicated extraneous offense of possession of a controlled substance because the prejudicial effect of the evidence

outweighed any possible probative value and because admitting the evidence constituted improper impeachment of Lopez.

We begin with Lopez's complaints about the admission of evidence related to possession of a controlled substance. To preserve a complaint for appellate review, a party must present a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a). As discussed above, the State presented evidence in this case that cocaine was located in plain view next to the driver's seat in the vehicle Lopez was driving. But Lopez made no objection when the evidence about the cocaine was admitted; therefore, Lopez did not preserve for review his complaints about the admission of the evidence related to possession of a controlled substance. *See id.* Furthermore, we explained above why, even if Lopez had preserved his complaints for review, the trial court did not err in admitting the evidence related to possession of a controlled substance. We overrule the first portion of Lopez's second issue and his third issue.

We thus turn to Lopez's complaint that the trial court erred by allowing the jury to receive evidence detrimental to him that was not admitted during the trial. The State offered into evidence an audio/video recording of the traffic stop. The recording was admitted without objection. The State then moved to publish the recording to the jury, which the trial court granted. At that time, the prosecutor noted that she and defense counsel had previously agreed to mute certain portions of the video, from 3:09:51 to 55 and 3:11:27 to 31. The State then began to play the recording for the jury but had to stop it because of technical issues with the audio portion of the recording. Later, the

prosecutor announced that the technical issues had been worked out and, instead of playing the entire recording, played the recording beginning at 3:13:07. Following closing arguments, the jury was then sent to deliberate along with "all the evidence that's been admitted in this case."

Lopez argues that the trial court erred because it made no instruction to any court staff to redact or mute the inadmissible portions of the audio/video recording during the jury's intra-deliberation viewing. But again, to preserve a complaint for appellate review, a party must present a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a). Here, Lopez did not make an objection when the jury was sent to deliberate with the audio/video recording nor did Lopez request that the trial court make an instruction to its court staff to redact or mute certain portions of the audio/video recording. Therefore, Lopez did not preserve his complaint for review. *See id.* We thus overrule the remaining portion of Lopez's second issue.

**Improper Admonishment**

In his fourth issue, Lopez contends that both the trial court and trial counsel violated the 5th, 6th, and 14th Amendments to the United States Constitution and Article 1, Sections 10, 13, and 19 of the Texas Constitution in not fully advising him of the range of punishment in his case.

As a pretrial matter, Lopez's counsel stated to the trial court that she would like to get on the record that Lopez rejected the plea offer. The trial judge then stated that he wanted to be clear that Lopez understood that in exchange for a plea of guilty to the

Lopez v. State                                                                                          Page 33

felony DWI, supported by a judicial confession and his statement that each and every allegation in the indictment was true and correct, the State was offering a sentence of ten years' imprisonment and dismissal of the enhancement paragraphs. The State added that the plea bargain would also include Lopez's plea of guilty to the pending possession of controlled substance case. The trial judge then clarified that the plea of guilty would be in exchange for ten years' imprisonment and that both ten-year sentences would run concurrently. The State agreed. The following exchange then occurred:

> THE COURT: Sir, did you understand what the proposed plea bargain agreement is?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you discuss that with your attorney, [Defense Counsel]?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand that by signing this rejection of plea agreement that you are telling the trial court, you're telling your attorney, you're telling the State that you are, in fact, rejecting that plea bargain offer?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you wish to go to this jury?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Understanding that the range of punishment in this case, if you were convicted, the range of punishment is up to 99 years or life in prison?
>
> THE DEFENDANT: Yes, sir.

[Prosecutor]: Judge, and also for the purpose of the record, I want to make sure that he understands that because the cases are now severed that there's a possibility in the Court's discretion that the sentences, if he's convicted of this DWI and then later convicted of the possession of controlled substance, that those sentences can run consecutive to each other as opposed to concurrent because of the severance. I just want to make sure he understands that.

THE DEFENDANT: Yes.

THE COURT: That's correct. You understand that I have the discretion, if in the event you would plead guilty in the other case and were to be found guilty by a jury, that any sentence that you receive in that case I could stack on top of it.

THE DEFENDANT: Yes.

THE COURT: And run consecutive with it?

THE DEFENDANT: Yes, sir.

Under article 26.13 of the Code of Criminal Procedure, the trial court must admonish a defendant of the applicable range of punishment before accepting a guilty plea. TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (West Supp. 2012). Lopez argues that it seems that the same standard should apply to the rejection of a plea bargain offer and request for a jury trial and that the record does not show that he was informed of the minimum end of the applicable punishment range. But Lopez does not point to any authority, nor have we found any, that supports his proposition of requiring the trial court to admonish a defendant of the applicable range of punishment before he or she rejects a plea bargain offer and enters a not guilty plea. Furthermore, the record does not support Lopez's apparent contention that his trial counsel never discussed the

minimum end of the applicable punishment range with him.[4]  The record only establishes that he discussed the plea bargain offer with his counsel, that he was rejecting the plea bargain offer and wanted to go to a jury, and that he understood that the upper end of the applicable punishment range was ninety-nine years or life in prison.  We thus overrule Lopez's fourth issue.

**Prosecutorial Misconduct**

In his fifth issue, Lopez contends that the prosecutor engaged in prosecutorial misconduct by taking advantage of the ineffectiveness of his defense counsel.  Lopez asserts that the prosecutor offered legally inadmissible testimony, made improper jury arguments during closing, and offered prejudicial exhibits into evidence, which rendered his trial a "mockery" and deprived him of his right to due process.

Generally, a defendant is required to preserve a prosecutorial misconduct complaint by (1) making a timely and specific objection (2) requesting an instruction to disregard the matter improperly placed before the jury; and (3) moving for mistrial. *Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *see* TEX. R. APP. P. 33.1(a); *Stahl v. State*, 749 S.W.2d 826, 831 (Tex. Crim. App. 1988) (noting that, in cases in which the Court of Criminal Appeals reversed for prosecutorial misconduct, defendant had objected to prosecutor's conduct).  Lopez acknowledges that his counsel did not object or preserve error when the prosecutor engaged in an alleged "objectionable tactic." Citing *Rogers v. State*, 725 S.W.2d 350 (Tex. App.—Houston [1st Dist.] 1987, no pet.),

---

[4] Whether Lopez's trial counsel discussed the applicable range of punishment with him was not an issue brought up in his motion for new trial.

Lopez argues that the prosecutor's misconduct nevertheless interfered with the trial process to such a degree that reversal is warranted.

In *Rogers*, our sister court reversed the trial court's judgment of conviction even though the appellant had failed to properly preserve many errors resulting from the prosecutor's misconduct. *Id.* at 360-61. The court explained:

> *Where there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process or, even worse, transforms the trial into a farce and mockery of justice,* as occurred here, *resulting in deprivation of fundamental fairness and due process of law,* the defendant is entitled to a new trial even though few objections have been perfected. *See Berger v. United States*, 295 U.S. 78, 84, 88, 55 S.Ct. 629, 631, 633, 79 L.Ed. 1314 (1935); *Ruth v. State*, 522 S.W.2d 517 (Tex. Crim. App. 1975); *Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977). Reversal is justified to reaffirm the critical importance of convicting the accused *only* upon the evidence presented, without attempting to inflame or prejudice the minds of the jurors. *Boyde* [*v. State*], 513 S.W.2d [588,] 591, 593 [(Tex. Crim. App. 1974)]; *Stein v. State*, 491 S.W.2d 548, 551 (Tex. Crim. App. 1973).

*Rogers*, 725 S.W.2d at 359-60.

Unlike in *Rogers*, however, when we consider Lopez's allegations of prosecutorial misconduct in light of the record in this case as a whole, we cannot conclude that the record supports a finding that the prosecutor was acting in bad faith. *See id.* at 360. Thus, *Rogers* is distinguishable, and Lopez was required to properly preserve his prosecutorial misconduct complaint, which he did not. *See* TEX. R. APP. P. 33.1(a); *Penry*, 903 S.W.2d at 764. We overrule Lopez's fifth issue.

**Ineffective Assistance**

In his seventh through tenth issues, Lopez contends that he received ineffective assistance of counsel at trial. We will address each claim in turn.

In his seventh issue, Lopez argues that his trial counsel was ineffective in not challenging the admissibility of the HGN test either in a Rule 705 hearing before trial or through cross-examination during trial in violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article 1, Sections 10, 13, and 19 of the Texas Constitution. But even assuming that counsel's performance was deficient, Lopez has not shown that his defense was prejudiced by counsel's performance with regard to the HGN test. We have already discussed the limited impact of Boyd's testimony about the HGN test. Boyd's testimony limited the implication of the HGN test results to the presence of alcohol or other substances in Lopez's system, and there is overwhelming evidence that Lopez had alcohol or other substances in his system. Moreover, the defense's main argument was not that Lopez had had nothing to drink that night but that Lopez was not intoxicated because, despite having had some alcohol to drink, he still had the normal use of his mental or physical faculties. Because Lopez has not established by a preponderance of the evidence that his defense was prejudiced by counsel's performance in not challenging the admissibility of the HGN test either in a Rule 705 hearing prior to trial or through cross-examination during trial, we cannot conclude under the facts and circumstances of this case that counsel's performance rose to the level of ineffective assistance based on Lopez's complaint on this issue. We overrule Lopez's seventh issue.

In his eighth issue, Lopez argues that his counsel was ineffective in allowing, by not objecting to, inadmissible evidence to be taken with the jury for viewing during deliberations in violation of the 5th, 6th, and 14th Amendments of the United States

Constitution and Article 1, Sections 10, 13, and 19 of the Texas Constitution. This "inadmissible evidence" of which Lopez complains concerns, as discussed above, the portions of the recording of the traffic stop that the prosecutor and defense counsel apparently agreed to mute. But even assuming that counsel's performance was deficient, Lopez has not shown that his defense was prejudiced by counsel's performance in allowing the entire recording of the traffic stop to be taken with the jury during deliberations.

As explained in Lopez's brief, the first portion of the recording that the prosecutor and defense counsel agreed to mute was a statement by Lopez's female family member that she knew the officers were going to have to take him because he had been drinking. But there is overwhelming evidence that Lopez had alcohol or other substances in his system, and the defense's main argument was not that Lopez had had nothing to drink that night but that Lopez was not intoxicated because, despite having had some alcohol to drink, he still had the normal use of his mental or physical faculties. The second portion of the recording that the prosecutor and defense counsel agreed to mute was a statement by one of the officers that Lopez was probably "speeding pretty good." But when the prosecutor asked Boyd if Lopez was "flying through" the stop sign, Boyd stated that Lopez was not and that he was just going a "steady speed." Thus, Lopez has not established by a preponderance of the evidence that his defense was prejudiced by counsel's performance in allowing the entire recording of the traffic stop to be taken with the jury during deliberation; therefore, we cannot conclude under the facts and circumstances of this case that counsel's

performance rose to the level of ineffective assistance based on Lopez's complaint in this issue. We overrule Lopez's eighth issue.

In his ninth issue, Lopez argues that his trial counsel was ineffective in failing to request a limiting instruction to be included in the charge to the jury regarding the alleged extraneous bad acts, which violated the 5th, 6th, and 14th Amendments to the United States Constitution, Article 1, Sections 10, 13, and 19 of the Texas Constitution, and Texas Code of Criminal Procedure 1.05. The "alleged extraneous bad acts" of which Lopez complains again concern the evidence that he possessed cocaine. We concluded above, however, that because the possession of cocaine evidence went to a material element of the State's case, it was not an extraneous offense. *Camacho*, 864 S.W.2d at 532. Furthermore, we explained above why the trial court did not err in admitting the evidence related to possession of a controlled substance. Because Lopez has not established by a preponderance of the evidence that counsel's performance was deficient by failing to request a limiting instruction, we cannot conclude under the facts and circumstances of this case that counsel's performance rose to the level of ineffective assistance based on Lopez's complaint in this issue. We overrule Lopez's ninth issue.

Lopez states in his tenth issue that his trial counsel was ineffective in not objecting to the admission of evidence of possession of cocaine, in not requesting a limiting instruction at the time the evidence was admitted, in not requesting a limiting instruction in the jury charge and not requesting any burden-of-proof instruction in the jury charge concerning the extraneous offense in violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article 1, Sections 10, 13, and 19 of

the Texas Constitution. Within the substance of the issue, Lopez also states that his counsel

> provided ineffective assistance of counsel by (1) failing to file an evidentiary Motion to Suppress to keep out testimony related to an unadjudicated allegation of possession [of] cocaine; (2) failing to file a 702 motion and request a hearing to challenge the training and qualifications of the state's expert prior to testimony before the jury; (3) failing to object at trial to the use of extraneous unadjudicated bad acts; (4) failing to seek limited use of the bad act evidence; (5) failing to object to unresponsive answers given by state witnesses; (6) failing to familiarize herself with the protocol of the Standard Field Sobriety Tests and failing to cross examine the arresting officer as to the administration of those tests; (7) failing to object to a multitude of leading questions asked by the State's attorney; (8) telling the jury during opening remarks that defendant was going to testify when that was Appellant's decision and the decision had not been firmly made by Appellant.

In response to Lopez's previous issues, we have already discussed these claims and explained why, considering the totality of counsel's representation, we conclude that Lopez has not proven by a preponderance of the evidence that (1) his counsel's performance was deficient, and/or (2) his defense was prejudiced by counsel's deficient performance.[5] We therefore overrule Lopez's tenth issue.

### Cumulative Effect of Error

In his eleventh issue, Lopez argues that the cumulative impact of the above errors was so great that the 5th, 6th, and 14th Amendments to the United States Constitution and Article 1, Sections 10, 13, and 19 of the Texas Constitution were violated and reversal is required. We disagree. The Court of Criminal Appeals has

---

[5] Unlike in Lopez's motion for new trial and accompanying affidavits, Lopez does provide on appeal a list of the questions that he contends that his trial counsel should have objected to during trial as leading. But Lopez still provides no explanation of how he was unduly prejudiced by virtue of the questions and therefore how his defense was prejudiced by counsel's failure to object to them.

stated, "It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But the *Chamberlain* court continued that non-errors may not in their cumulative effect cause error. *Id.* Because we have not concluded that the trial court erred in this case, we overrule Lopez's eleventh issue.

## Conclusion

Having overruled all of Lopez's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed February 28, 2013
Do not publish
[CRPM]